WILLIAM F. SELLARS ET AL. V. BLANCHE L. FOSTER ET AL.

[FILED JUNE 27, 1889.]

1. **Trial:** EVIDENCE: BOOKS OF SCIENCE. A table showing the expectancy of life in healthy persons of different ages, printed in a law book of general acceptance and authority in the courts of this state, as the Carlisle tables of expectancy, is admissible in evidence in cases where such evidence is applicable.

2. ———: ———: ERROR WITHOUT PREJUDICE. In an action by a widow on behalf of herself and infant child against defendants, saloon keepers and their sureties, the cause of action being the selling of intoxicating liquors to the husband and father of the plaintiff and her said child, by reason of the drinking of which he became and was intoxicated, and that while so intoxicated and endeavoring to board a moving freight train on a railroad he was run over by the cars and killed, on the trial there was introduced in evidence an excerpt in the form of a table of expectation of life, but which contained no intrinsic evidence of authenticity: *Held*, That while said excerpt was erroneously

admitted in evidence, as it was more favorable to the party excepting than was the Carlisle table of expectation as contained in a law book which was properly admitted in evidence, it was error without prejudice to the plaintiff in error.

3. **Evidence:** ERROR. To entitle a plaintiff in error to a review of the ruling of the court below on the rejection of testimony it is required that the party complaining shall have made an offer of the testimony, clearly indicating what he expects to prove by the witness in response to the question propounded and overruled by the court. (*Yates v. Kinney,* 25 Neb., 120, and cases cited.)

4. **Instructions** given and refused examined, and *held,* no reversible error in their giving or refusal.

5. **The evidence** considered, and *held,* to sustain the verdict.

ERROR to the district court for Harlan county. Tried below before GASLIN, J.

*C. C. Flansburg,* and *James McNeny,* for plaintiffs in error, cited: Abbot's Trial Evidence, pp. 609, 724.

*Judson Ferguson,* and *John Dawson,* for defendants, cited: *Donaldson v. M. & M. R. R. Co.,* 18 Ia., 291; *Bowman v. Woods,* 1 G. Greene (Ia.), 441; *McHenry v. Yokum,* 27 Ill., 160; 2 Thompson on Trials, sec. 2407.

COBB, J.

This cause was tried in the district court of Harlan county, and brought to this court for review on error.

The plaintiff below, Blanche L. Foster, the widow of Henry W. Foster, for herself and as next friend for her minor child, Edwin Foster, complained that William F. Sellars, Frederick W. Hildebrandt, and Frederick E. Dale, on August 29, 30, and 31, and September 1, 1887, were engaged in the retail traffic in intoxicating liquors in Alma, Harlan county, and had on said days license to sell malt, spirituous, and vinous liquors, issued by the proper authorities of Alma; and that on said days Matthew

Becker, Minna A. Kamminga, John Rohner, G. Raisch, Herman Nass, August Dobberstein, Philip Ott, and J. A. Smith were the bondsmen of William F. Sellars.

2. That at the time Sellars, Hildebrandt, and Dale procured license to sell liquor, on May 1, 1887, they severally gave bond in $5,000 to the state that they would not violate any of the provisions of chapter 50, Compiled Statutes, entitled "Liquors," or any of the ordinances of the corporation of Alma, during the year from May 1, 1887, and ending April 1, 1888, and pay all damages that the community or individuals might sustain by reason of the sale of intoxicating liquors; that the bond of Sellars was signed by the above defendants, that of Hildebrandt by Josiah Zerbe and others, and that of Dale by Charles Hummell and others; and that all of said bondsmen were sureties for their respective principals on August 29, 30, and 31, and September 1, 1887; and true copies of the bonds are exhibited.

3. On said last mentioned days the plaintiff was the wife of Henry W. Foster, and a resident of Alma, and Edwin Foster is their minor child.

4. On the days last mentioned Henry W. Foster became intoxicated and continued in a state of intoxication and drunkenness for four days up to the time of his death; that he spent his time on those days in the saloons and places of business of Sellars, Hildebrandt, and Dale in Alma.

5. That they sold, gave, and furnished to him the liquors which caused his intoxication, and furnished it in sufficient quantities to cause his intoxication, and did cause his intoxication and keep him under the influence of liquor, and continued to sell, furnish, and give liquors and intoxicating drinks to him while so intoxicated.

6. That on September 1, 1887, while so intoxicated and under the influence of liquor so sold, furnished and given to him by said Sellars, Hildebrandt, and Dale, in Alma, Henry W. Foster undertook to board and get on a train

of cars of the Burlington & Missouri River Railroad, in Alma, and fell under the train of cars and was thereby run over, and had his leg crushed, and was otherwise injured, from which he suffered and died on the last mentioned day; that said. accident and death were caused from the effects of the liquors so sold to him by Sellars, Hildebrandt, and Dale.

7. That plaintiff and her minor child were both dependent upon Henry W. Foster for their means of support; that the proceeds of his labor and earnings amounted to $1,000 per year, which he applied to the plaintiff's support; that he was thirty-five years of age, was healthy, energetic, and industrious.

8. The plaintiff and her minor child constitute one family, and are without means of support, and have sustained damages, in the premises, in the sum of $15,000; and pray judgment, etc. The defendants, W. F. Sellars, Math. Becker, Minna A. Kamminga, John Rohner, G. Raisch, Herman Nass, Aug. Dobberstein, Philip Ott, and J. A. Smith answered admitting that Sellars is engaged in the retail liquor traffic in Alma, and that they are his bondsmen, but denying each and every other allegation of the plaintiff. Other defendants did not answer. There was a trial to a jury with findings for the plaintiff and damages assessed against the defendants named to the amount of $2,500.

The motion of defendants for a new trial was overruled and judgment was entered against said defendants on the verdict.

The plaintiffs in error assign for review the following errors of the court below:

1. In admitting in evidence the longevity tables marked A.

2. In excluding the evidence of R. M. Liberty as to the reputation of Huston.

3. In rejecting the evidence of W. Campbell as to the reputation of Huston.

4. In overruling defendants' objection to the question to plaintiff as to how much deceased could have earned and contributed to his family's support during his lifetime.

5. In giving instruction 1 to the jury on the court's own motion.

6. In giving instruction 2 on the court's own motion.

7. In giving instruction 3 on the court's own motion.

8. In giving instruction 1 on the motion of the plaintiff.

9. In giving instruction 3 on the motion of the plaintiff.

10. In refusing instructions 3, 4, 5, and 9, requested by defendants.

11. In refusing and modifying instruction 3, requested by defendants.

12. In overruling the defendants' motion for a new trial.

On the trial the plaintiff offered in evidence a printed excerpt containing tabular rows of figures in the form of longevity tables of the expectancy of life, which was admitted against the objection and motion of defendants: (1), that there was no proper foundation laid for its introduction; (2), that the tables offered do not purport to be the Carlisle table of expectation of life; and (3), because the tables offered have not been proven to be the Carlisle table, or any other table of vitality, or authorized or taken from any text book of authority; and (4), because the same is incompetent, irrelevant, and immaterial. The plaintiff offered the further evidence of so much of page 534 of Maxwell's Pleading and Practice, 3d ed., 1880, as shows the Carlisle table of the expectation of life, to which the defendants objected for the same reasons stated in the last motion. The plaintiffs in error now argue in the brief of counsel that the court erred in the admission of these tables without proof that they were the Carlisle tables or that they purported to be such. While this objection might apply to the printed excerpt, it does not apply to the table set forth in Maxwell's Pleading and Practice. This text book

being an authority of general acceptance in the courts of this state, and the table therein being entitled Carlisle's table of expectation of life, with a brief history of its construction from vital statistics collected by its author, its general use and approval as such relieves it of the technical objections. It was admissible under the authority of most text writers on evidence. The excerpt, in the shape presented, may be admitted as lacking authenticity. It is not a copy of the table in the authority referred to. It sets down the expectancy of a person at thirty-five years of age to be twenty-nine and seven-twelfths years, while in the table from Maxwell's volume, which we hold to be admissible, the expectancy is set down at thirty-one years. The printed slip introduced being, therefore, less unfavorable to the plaintiff in error than the book, the admission of the former was error without prejudice to the party complaining.

The second and third errors relied on are based upon the rejection by the court of certain evidence offered by the plaintiffs in error for the purpose of impeaching one Charles Huston, who had testified as a witness for the plaintiff. It appears from the bill of exceptions that the defendants called as a witness R. M. Liberty, who testified that he had "lived in this town" (Alma) for four years; that he knew Charles Huston, and to the question, "Do you know his general reputation for truth and veracity in the community?" he answered: "As far as I know, it is bad." On motion of the plaintiff this answer was stricken out, as irresponsive and improper; and counsel for defendants put the following question: "State, if you know, this man's general reputation for truth and veracity in this community." The objection of the plaintiff to this form of inquiry was sustained, and the defendants put the following question: "State what you do know about his general reputation for truth and veracity." To which the plaintiff objected, and the objection was sustained; when

the defendant put the following question : "As far as people say anything about him, what is his reputation for truth and veracity?" to which the plaintiff's objection was again sustained; also the question, "State if you have heard of his reputation for truth and veracity in this community," which was overruled; and then was put the question, "Have you ever heard anybody call his general reputation for truth and veracity in this community in question?" to which the plaintiff's objection was also sustained.

The defendants then called Wm. Campbell, a witness on their behalf, who testified that he had lived "in this town" for nine years and that he was acquainted with Charles Huston:

Q. Do you know his general reputation for truth and veracity in this community?

A. I don't know it as general. I have heard a few persons speak of his truth and veracity.

The plaintiff's motion to strike out the answer, as irresponsive and improper, was sustained.

Q. Do you know his general reputation for truth and veracity in this community?

A. I don't think he is generally known.

Q. Do you know his reputation among those who do know him?

The plaintiff's objection to this question, as incompetent and improper, was sustained.

It nowhere appears in the bill of exceptions that the defendants below made any offer to the court to prove any specific facts for the impeaching of the witness Huston by either witness Liberty or Campbell, or by any other witness; and while there was in no event error in the sustaining of objections offered by plaintiff to the testimony of either witness, that need not be discussed anew here, as it has become a settled rule, in this state, that to entitle a plaintiff in error to a review of the ruling of the court below on the rejection of testimony, it is required that the party shall

have made an offer of the testimony, clearly indicating what he expected to prove by the witness in response to the questions propounded and overruled by the court.

The plaintiff being examined as a witness in her own behalf, and having testified to her marriage with Henry W. Foster, and as to his habits of intoxication, his injury while intoxicated, from falling under the moving cars of a railroad train, his subsequent death therefrom, and other circumstances tending to support her action against the defendants, her counsel proposed the question: "State how much he could earn and contribute to the support of his family during his lifetime." To which the defendants objected, as immaterial and improper, and the objection being overruled, she answered: "He could earn $1,000 a year. I know he made $1,200 the year before last, and last year he got $20 a week, and some per cent, from Hutchins." The overruling defendants' objection, and permitting the plaintiff to answer this question, constitutes the fourth error argued in the plaintiff's brief. Counsel seem to understand the question as relating directly to and calling from the witness an opinion or knowledge, through psychological or metaphysical means, of what amount her deceased husband would have been able to earn and contribute to the support of his family during his future lifetime, had he been spared. While it is true that the loss to the plaintiff, for which, under the law, she had a cause of action against the defendants, consisted in the loss of that support, which she had a right to expect from the earnings of her husband, the value of that support could only be estimated by proof of what it had been in the past. The question may have been infelicitously put, but it will still bear the construction evidently placed upon it by the witness in her answer, and by the court, that what he had been able to earn and contribute in the past he might be able to do in the future. Her answer strongly indicates that such was the construction she placed upon it, and whatever

might be said of the question, abstractly, taken in connec-. tion with the circumstances of the answer, I think it free from error.

The fifth, sixth, seventh, eighth, and ninth assignments are based upon the court's instructions to the jury, numbers one, two, and three on its own motion, and the eighth and ninth assignments are based upon instructions numbers one and three, given on the motion of the plaintiff below.    These instructions are set forth in the transcript.

"I. If you find the principal defendants were licensed to sell malt, spirituous, vinous, and intoxicating liquors or drinks, and that the other defendants were their bondsmen, as averred by plaintiff, and you find the deceased, Henry W. Foster, at the time of his death, was intoxicated, and that such intoxication was the cause of his death, and you find that he was the father and husband of plaintiffs, and they were dependent on him for their support as alleged, and you find all the principal defendants sold or gave to deceased intoxicating drinks, which contributed to such intoxication, and you further find the plaintiffs have lost the means of support which would have been supplied to them by said deceased, you must find for the plaintiffs against all the defendants, assessing your damages at actual value of such loss of support to plaintiffs, estimating his expectancy of life upon the Carlisle tables introduced in evidence before you; if you find the deceased was a strong, robust man, bearing in mind in any event you only can return a verdict (if any) against those principal defendants and their bondsmen, whom you find, by a fair preponderance of evidence, sold or gave to deceased the intoxicating drinks which contributed towards or caused intoxication of deceased, which caused his death; and should you find the deceased was intoxicated at the time of his death, and that his decease was caused by such intoxication, in no, nor in any, event can you return a verdict against any of the principal defendants and their bondsmen unless a fair pre-

ponderance of the evidence satisfies you such principal defendants sold or gave to deceased intoxicating drinks, which caused or contributed to the intoxication of the deceased.

"In other words, should you find the deceased came to his death by means and reason of being intoxicated, at the time and place the principal defendants as gave or sold intoxicating drinks to deceased, and their bondsmen—and this you must find from the preponderance of evidence; and should you find a part or portion of the principal defendants gave or sold intoxicating drinks to deceased, and a part or portion did not, you will return a verdict against the former and their bondsmen, and in favor of the latter and their bondsmen, bearing in mind your verdict cannot exceed the amount of damages claimed against any principal defendant, and not to exceed the penalty of the bond signed by the respective bondsmen.

"II. This action being brought for loss of means of support which would have been supplied to the plaintiffs by the deceased father and husband had he lived, the extent of such loss is to be considered and measured by you by the kind, character, and value of the services of the deceased to plaintiffs, in his vocation or business when living; and as to the value of the loss of such means of support to the minor child of plaintiff, it will depend in some degree upon the age and ability to support himself, bearing in mind you cannot take into consideration and assess remote, speculative, or exemplary and punitive damages; but you can assess damages (if any) only to the extent of the real and actual value of the loss of means of support to plaintiff occasioned by the death of the father and husband.

"III. In passing on this case, should you find for the plaintiff, in estimating the damages you must take into consideration the situation of the deceased, his estate, if any, the physical condition and health of deceased, his means of earning money and a livelihood, and his habits of industry, his vocation, the daily, monthly, or annual

product or value of same, and whether any of the plaint-, iffs are of such tender age as to render them entirely dependent upon parents, and especially upon the deceased, for support, taking into consideration his reasonable expectation of life; and should you find he was a strong, robust man, the Carlisle tables of expectancy introduced in evidence before you will be the proper estimate of his, the deceased's, life."

The plaintiff then asked the following instructions, which were given:

"I. The jury are instructed that though they may believe from the evidence that the deceased had bought or taken liquor at places other than the saloons of William F. Sellars and Fred. W. Hildebrandt, still this fact would constitute no defense to this action, provided the jury believe from the evidence that the deceased obtained intoxicating liquors at the saloon of Hildebrandt and Sellars which contributed to his intoxication, and that his death resulted as a consequence of such intoxication."

"III. If you find for the plaintiff, you will find such damages as she and her minor child have suffered in a pecuniary way by the death of said Foster. It is proper in making up your estimate to take into consideration the occupation of the deceased, his annual earnings, his health, his age, habits, and taking all these facts into consideration, give such damages as will compensate her and her minor child for the loss they have sustained of the means of support in the death of said Henry W. Foster. And it is proper for you, in this connection, to take into consideration the probable length of the life of the deceased, Henry W. Foster, if he had not lost his life by the accident."

The first point urged by counsel in the brief, under this head, is that the first instruction authorized the jury to assess the damages for loss of support, basing the assessment solely on the Carlisle tables of expectancy. While the defend-

ants admit that this may be true, granting that the tables were properly admitted, and in case the deceased was shown to have been a strong, robust man, they contend that the charge was erroneous, it being without reference to his previous habits of life, and that it was inapplicable to the issues, in that the deceased was not shown to have been a strong and robust man, as stated in the instruction.

Taking up the examination of the plaintiff, where it was last referred to, when considering a former part of her evidence, it proceeded as follows:

Q. State if he supported you and your child well.

A. I never wanted for anything, until I came here.

Q. State his physical condition.

A. He was as healthy as any one.

The plaintiff was subjected to a long and exhaustive cross-examination in which no reference whatever was made to the physical condition, strength, or health of the deceased. From which, as well as from her direct examination, it appears that he was a photographer, which had been his vocation up to the time of his death, and being "as healthy as any one," as testified to by the plaintiff, there was furnished sufficient evidence to the jury of his being a strong, robust man.

The second point urged in the brief will be again referred to. Counsel complain of the second instruction that it assumes that the plaintiffs in error gave or sold to deceased intoxicating drinks which contributed to his death, and further assumes that the drinks so sold caused the intoxication which produced his death. A careful reading of the instruction impresses me with the belief that this section of the counsel's brief was written through a misapprehension or misapplication of fact, as the sole object and purpose of the instruction was to caution the jury against considering any remote or speculative damages to the plaintiff below, and against assessing exemplary or punitive damages, but only, in any event, to assess damages to the extent

of the real and actual loss occasioned by the loss of means of support from the husband and father. No reference is made in the instruction to defendants' giving or selling intoxicating drinks to the deceased which caused his death.

The objection made to the third instruction is that it tells the jury that, in estimating the damages which they can find the plaintiff entitled to recover, the physical condition and health of deceased, his means of earning money, his habits of industry, his vocation, or the daily, monthly, and annual value of the same, is alone to be taken into consideration, without reference to the part or portion of the product of his labor which went to the support of the defendant in error.

By reference to her testimony it will be seen that she had been married to the deceased three and one-half years; that after their marriage they lived at Ida Grove, Iowa, for one year, during which he was intoxicated twice. They removed to Syracuse, in this state, where they lived a year and a half, during which he was intoxicated but twice; that he never began to drink to excess "until he came here." From Syracuse they removed to Pawnee City, and remained less than a year, where he did not drink at all; they went thence to Republican City, remaining a month or six weeks; before she joined him there he drank some, afterwards he was slightly intoxicated once. About July 20, preceding his death, they came to Alma, where he shortly commenced drinking to excess; that during all the time prior to coming to Alma he devoted his entire earnings to the support of his wife and child; that when she was not with him he sent his earnings to her; that they accumulated about $400 of household furniture, some of which she was obliged to sell for support after coming to Alma; that after coming, and up to the time of his death, though his earnings were considerable, but a trifling part was devoted to the support of herself and child; the balance and greater part was spent in the saloons of the defendants.

Applying the instruction to this evidence, I think it cor-
rect.

Returning to the first instruction, defendants say that it
is inconsistent with the third instruction requested by them
and modified by the court, and given to the jury, as fol-
lows:

"3. If the jury find from the evidence that the deceased
was in the habit, prior to his coming to Alma, and after-
wards, of drinking to excess, and that for several days
prior to that of his decease he was intoxicated, and from
the effects of which he became and was suffering from a
depressed, unsteady, or excited, nervous condition, and
while in such condition undertook to get on the train, and
by accident was thrown under the train and killed, still
you should find for defendants, unless you should find that
the deceased was intoxicated at the time of the accident;
that such intoxication caused or contributed to his death,
and the liquor which produced this intoxication was sold
or given to the deceased by the defendants or some of them,
their agents or employés"; which the court refused to give
but did give with this modification: "If you find the
death of deceased was caused by nervous prostration, or
physical disability, occasioned or caused by intoxicating
drinks sold or given by defendants or either of them,
against such defendants or either of them, or his or their
bondsmen, you will be warranted in finding a verdict, even
if deceased was not actually drunk or intoxicated when
killed, provided his death was caused by such and said in-
toxicating drinks."

The argument is made that by the first instruction the
jury were told that in order to find for the plaintiff they
must find that the deceased was intoxicated at the time of
his death, which was caused by such intoxication; while in
the third instruction asked by defendants, as modified by
the court, they are told that if they find that the death of
deceased was caused by nervous prostration or physical dis-

bility, occasioned or caused by intoxicating drinks sold or given by defendants or either of them, against such defendants or either of them, or his or their bondsmen, they would be warranted in finding a verdict, even if deceased was not actually drunk or intoxicated when killed, provided his death was *the cause of such and said intoxicating drinks.*

The last clause of the modified instruction is evidently not correctly stated in the bill of exceptions. It never could have been so intended or written by the judge who presided; nor, had it been thus, could it have escaped the notice of the counsel, of either side, who conducted the trial of the case. It will therefore be corrected in this court and made to read "provided his death was caused by such and said intoxicating drinks," and so read there is no inconsistency between it and the first instruction of the court on its own motion. The mental and physical prostration, and inability of self-protection, in the face of danger, from excessive drinking of intoxicating liquors are consubstantial with drunkenness itself, and, with the same conditions, takes the same risks and penalties.

Counsel predicate some part of their argument upon, as they state it, the refusal of the sixth, seventh, and eighth instructions by the court on the motion of defendants. These instructions are not found in the bill of exceptions. There are only found, of those not heretofore set forth, the fourth, fifth, and ninth asked by defendants and refused by the court, as follows:

"4. The court instructs the jury that if the death of a party who receives an injury while intoxicated can be traced as the natural and probable result of any new and intervening cause, such as reckless exposure of himself, the liquor seller will not be responsible to the wife for the death.

"5. The jury are instructed as a matter of law that while a man is answerable for the natural and probable consequences of his own acts, still if his act happens to

concur with something extraordinary, and not reasonably to have been foreseen, and thus produce an injury, he will not be liable therefor; provided, that such extraordinary and unforeseen condition was not produced by, or was not the direct result of, his own wrongful act.

"9. And as a matter of law that the damages to be recovered in an action must always be the natural and proximate consequence of the wrongful act complained of. If a new force or power has intervened, of itself sufficient to stand as the cause of the mischief or injury, the first must be considered too remote."

It is argued that these were erroneously refused. The theory and text of these were those of the seventh, eighth, ninth, and tenth prayers for instructions offered and refused on the trial of the case of McClay v. Worral, 18 Neb., 44; which were, I conceive, sufficiently considered and properly disposed of in the opinion of that reported case, which is referred to here rather than to go over, unnecessarily, the same ground again. There was no error in the refusal to give these instructions.

The evidence in this case sufficiently establishes the facts that the deceased had been for a considerable time drinking to excess of liquors sold and furnished to him by the principal defendant against whom the judgment, in the court below, was rendered; that on Monday, Tuesday, and Wednesday, the 29th, 30th, and 31st days of August, he was deeply intoxicated on liquors sold and furnished by defendant and his employés; that on neither Tuesday nor Wednesday night was he capable, from intoxication, to get his clothes off and go to bed; that he was under the influence of intoxicating liquors continuously up to the time of the accident which caused his death.

There can be no doubt from the evidence that on the morning of September 1 he drank twice, two drinks of spirituous liquor, though not in the saloon of the defendant Sellars, and that shortly before the accident he was

furnished with a bottle of whiskey, part of which was on his person at the time of the accident. This bottle of whiskey, the witness Huston testifies, was furnished to him by the barkeeper of Sellars, through the agency of the witness.

J. D. Whitelock, at whose house the deceased and his family were boarding, and who was called as a witness by defendants, testified that, on the day of the accident, at dinner time, he saw him, and in reply to defendants' counsel and the question, "Was he drunk or sober?" answered, "He had been drinking, but I would say that he was nearer sober than drunk; I said to his wife, he was sobering up; she said she wished he would."

On this day, September 1, in a condition between drunk and sober, but suffering from the depressed, nervous and enfeebled condition of mind and body, caused by long, continuous intoxication, from which he had in no degree recovered, in endeavoring to board a moving freight train of cars on the railroad track he was run over and killed.

While this case, in many of the features of the trial, and especially in the preparation of the bill of exceptions, is not entirely satisfactory to a reviewing court, there is in it no sufficient cause for reversing the judgment, and it is therefore affirmed.

JUDGMENT AFFIRMED.

THE other Judges concur.