McClay v. Worrall.

JAMES G. McCLAY, JR., WILLIAM MANGAN, AND JOHN FORD, PLAINTIFFS IN ERROR, v. NANCY WORRALL, DEFENDANT IN ERROR.

1. **Liquors:** DAMAGES BY SALE OF: ACTION BY PAUPER. A poor person dependent for support upon a relative, according to the provisions of chapter 67, Comp. Stat., may, in his own name and for his own benefit, maintain an action against a vendor of intoxicating drinks for the loss of such support, caused by the death of such relative, when such death occurs in consequence of the traffic of such vendor in intoxicating drinks, without any action of the county commissioners in that behalf.

2. **Challenge to Jurors.** When such action is brought against two or more defendants they are entitled to no more peremptory challenges of jurors than where the action is against a single defendant.

3. **Instructions.** Certain instructions prayed by defendants and refused by the court examined, and *Held*, Properly refused.

ERROR to the district court for Nemaha county. Tried below before BROADY, J.

*Stowell & Kelligar, J. C. Watson, E. W. Thomas*, and *G. B. Beveridge*, for plaintiffs in error.

*Osborn & Taylor*, for defendant in error.

COBB, CH. J.

This action was brought by the defendant in error for the loss of her support, in the homicide of her only son, Davis S. Worrall, who was killed by one Mark Hall, on the 4th day of July, 1884, at North Auburn, Nemaha county. The action was brought against the plaintiffs in error, James G. McClay and William Mangan and John Ford, co-partners in business as Mangan & Ford, on the ground that they, being at the above date saloon keepers at said place engaged in selling intoxicating liquors, both the said McClay and Mangan & Ford, at their respective saloons sold and furnished to the said Mark Hall and the said Davis S. Worrall intoxicating liquors, which they then and there drank, that they thereby became intoxicated and by reason of such intoxication they became engaged in a wrangle, and the said Mark Hall assaulted the said Davis S. Worrall with a billiard cue and killed him, thereby causing the loss of support to his aged mother, the plaintiff.

It was proved on the trial that the plaintiff is fifty-nine years of age, that she is a widow, and has been for twenty-one years; that she is and has been for the last ten years of delicate and failing health, and unable to perform manual labor except to a very limited extent; that she has no property or means, except a very few cheap household goods; that she has for ten years, up to the time of the death of her son, Davis S. Worrall, lived with and been supported by him by means of his labor; that she has no son now living; that she has four daughters all of whom are married, and none of whom have any property or means for the support of plaintiff. It also appears that the said Davis S. Worrall was, at the time he was killed as aforesaid, of the age of twenty-three years, and unmarried; that he was engaged in cultivating rented land; that he owned a team and a few agricultural implements, but was in debt for a portion of them; that he was a strong, healthy man, industrious and of good habits.

It was also proved, as well as admitted in the pleadings, that at the time of the death of Davis S. Worrall the defendants, McClay by himself and Mangan & Ford together as partners, were engaged in selling malt, vinous, and intoxicating liquors at Auburn. It was also proved that on the day in question, and before the altercation in which Davis S. Worrall lost his life, both McClay and Mangan & Ford at their respective saloons in Auburn, by themselves and their respective barkeepers, sold and furnished both to Davis S. Worrall and Mark Hall, the man who killed him, intoxicating liquors at different times, which they severally drank, and by means of which they both became intoxicated; that by reason of such intoxication they quarreled and Hall struck Worrall with a billiard cue, from the effect of which he soon afterwards, and on the same day, died.

The jury found a verdict for the plaintiff, and assessed her damages at one thousand dollars. The cause was brought to this court on error.

The first error assigned was raised by demurrer to the petition and by objection to the introduction of any testimony under it, on the ground of the insufficiency of the petition to state a cause of action. The point is stated by counsel in their brief in the following language:

" *First.* Because she does not belong to either of the classes named in the statute upon which she founds her action.

" *Second.* Because her claim is for support as a pauper, and she does not show that her pauperism in any way grows out of or is justly attributed to the liquor traffic, and if she claims as a pauper she has no right of action for support in her own name, under the provisions of the Slocum law. The law by Sec. 17 having provided a specific remedy to compel the support of paupers, that remedy must be strictly followed.

" *Third.* That if she had a legal right to support at the hand of her adult son, Davis S., which she could enforce in

this action, that legal right depended upon the provisions of chapter 67 of the statutes relating to paupers, and before she could recover in this case she must allege facts in her petition and prove the same on the trial establishing a full compliance with the provisions of that act, and in addition she must allege and prove that Davis S. was of sufficient ability to support her as is contemplated by the pauper act, all of which she fails to do."

The following is the provision of statute above referred to—Sec. 1, chap. 67, Comp. Stats.: " Every poor person who shall be unable to earn a livelihood in consequence of any bodily infirmity, idiocy, lunacy, or other unavoidable cause, shall be supported by the father, grandfather, mother, grandmother, children, grandchildren, brothers, or sisters of such poor person, if they or either of them be of sufficient ability ; and every person who shall refuse to support his or her father, grandfather, mother, grandmother, child, or grandchild, sister or brother, when directed by the county commissioners of the county where such poor person shall be found, whether such relative shall reside in the same county or not, shall forfeit and pay to the county commissioners, for the use of the poor of their county, such sum as may be by the county commissioners adjudged adequate and proper to be paid, not exceeding ten dollars per week, for each and every week for which they or either of them shall fail or refuse, to be recovered in the name of the county commissioners, for the use of the poor aforesaid, before a justice of the peace or any other court having jurisdiction ; *Provided,* That whenever any persons become paupers from intemperance or any other bad conduct, they shall not be entitled to support from any relative except parent or child ; *And provided further,* That such poor person entitled to support from any such relative may bring an action against such relative for support, in his or her own name and behalf."

This statute declares the liability and legal obligation of

the relatives designated to support the class of poor persons
therein named, and provides the manner by which the poor
fund of the county may be re imbursed in cases where such
relatives, being of sufficient ability, shall neglect or refuse
such support after being required to furnish it.   But it
also provides that such poor person may avail himself of
the right to support therein declared, without resort to the
overseers of the poor.   It was clearly the object of the
second proviso to the section above quoted to open an ave-
nue to the compulsive support of the class of persons therein
contemplated, not through the poor-house, but through the
courts of justice.   In such cases it is the court and not the
county commissioners as overseers of the poor which may
decide upon the status of such poor person and the ability
of the relative to furnish such support.

The case at bar was brought under the provisions of
chapter 50, and the plaintiff need only invoke the provisions
of chapter 67 for the purpose of establishing one link in
the chain of law constituting her right to recover, to-wit:
The legal obligation resting upon a son of whatever age,
being of sufficient ability, to support his aged, infirm, and
destitute mother.   Sec. 13 of chapter 50, Comp. Stat., pro-
vides that, "The person so licensed shall pay all damages
that the community or individuals may sustain in conse-
quence of such traffic," etc.   The context sufficiently shows
that the traffic here mentioned is the traffic in malt, spirit-
uous, and vinous liquors and any intoxicating drinks, and
by the provisions of section 11, the provisions of section 13
are made to apply to all persons engaged in such traffic,
whether licensed or not.

The foundation of the plaintiff's right to damages against
the plaintiffs in error is, that by means and in consequence
of their traffic she has sustained the loss of that support
which the law of the state as well as the law of nature gave
her a right to, at the hand of her son.   *Non constat* that
but for his untimely death in consequence of such traffic

she would ever have occasion to invoke the laws of the state against him for such support. It may be and is granted, that in an action under the proviso above quoted by one relative against another for support, the ability of such relative would have to be alleged and proved, and it is equally true that in the case at bar the plaintiff must have alleged and proven facts sufficient to establish a legal and reasonable expectancy that but for his death her son would have continued in the future as in the past to possess the ability to support her. This she has done, and none the less so because his ability as proved consisted less in accumulated property than in strong arms and a willing heart.

The second error assigned is, because the court erred in refusing to allow the defendants below the number of challenges they were entitled to by law, and in refusing to allow to each of the defendants three peremptory challenges they were entitled to by law. This point is not urged in the brief and may be considered as abandoned. It may not be out of place, however, to observe that it was held by this court in the case of *Kerkow et al. v. Bauer*, 15 Neb., 150, that a suit of this character may be brought " against any and all persons jointly or severally who sold, gave, or furnished any intoxicating liquor which was drank by him on the day or about the time of such intoxication," and there can be no doubt of the correctness of such holding. When such action is a joint one as to the defendants, they are, however numerous, but one party to the action, and are all together entitled to no greater number of peremptory challenges of jurors (if any) than though there was but a single defendant.

The third assignment of error is based upon the claim of the inadmissibility of any testimony under the pleadings, and presents the same question as that considered under the first head.

The fourth error assigned is predicated upon the refusal

McClay v. Worrall.

of the court to give to the jury instructions Nos. 2 and 3 of instructions prayed by defendants.

These instructions present the same point as that presented under the first error assigned, and which we have already considered sufficiently for the purposes of this opinion.

The fifth is upon the refusal of the court to give instructions numbered 4, 5, 6, 7, 8, 9, and 10 of defendants' prayers, and the giving of instructions 5, 6, and 7 of plaintiff's prayers.

The prayers of defendants above referred to appear in the record as follows:

"No. 4. And the jury are instructed that under the statutes above named it is incumbent upon the plaintiff to prove the intoxication of Davis S. Worrall and Mark Hall, and that the defendants, while the said Mark Hall and Davis S. Worrall were disqualified by intemperance, sold or gave Mark Hall or Davis S. Worrall intoxicating liquors which contributed to their intoxication.

"No. 5. The jury are instructed that it is incumbent upon the plaintiff to prove that the damage to the means of support of plaintiff was caused solely and alone from intoxication, and that these defendants either sold or gave intoxicating liquors which contributed to or caused the intoxication.

"No. 6. The jury are further instructed that if any other cause conspired with the intoxication to produce the death of Davis S. Worrall, and that the cause of such death cannot be traced directly and proximately to intoxication, and that intoxication was not wholly or in part induced by sale or gift of intoxicating liquors by these defendants, then they must find for defendants.

"No. 7. In determining whether the intoxication was the immediate or proximate cause of the death of the deceased, the jury should consider whether the causes which actually produced the death were such as naturally resulted as a consequence of the intoxication, and of such kind as

might have been reasonably anticipated by a reasonable person. If they were not such then the intoxication cannot in law be regarded as the immediate and proximate cause of the death, and the defendants are not responsible therefor.

"No. 8. In determining whether an act is the proximate cause of an injury, the legal test is, was the injury of such a character as might reasonably have been foreseen or expected as the natural result of the act complained of? A party is not, in law, chargeable with results which do not naturally and reasonably follow as the consequences of his conduct.

"No. 9. An act is the proximate cause of an event only when, in the natural course of things and under the peculiar circumstances surrounding it, such an act would naturally produce the event, and in order to create a legal liability for damages the injury must be such as a man of ordinary experience and sagacity could foresee might probably ensue from said act. The relation of cause and effect must be shown to exist between the act complained of and the injury, and this relation of cause and effect cannot be made out by including the illegal act of a third party.

"No. 10. The damages to be recovered in an action must always be the natural and proximate consequence of the wrongful act complained of. If a new force or power has intervened, of itself sufficient to stand as the cause of the mischief or injury, the first must be considered as too remote."

The first of the above instructions (No. 4) is to the effect that in order to hold the defendant liable for the damages resulting from the intoxication of the persons named, they must be shown to have been already intoxicated when the defendants furnished them intoxicating liquors. Such is not the law. The defendants are liable for furnishing the means of intoxication—as well the first draught by which the state of intoxication was initiated as

subsequent ones by which it was continued and inflamed. And such would be true even were it in proof, which it is not in this case, that defendants furnished the first draught while the subject of the intoxication was perfectly sober, and the liquors which intensified and completed the intox- ication were furnished by other parties, so that when the careful and responsible liquor dealer sells a glass of brandy to be drank as a beverage, he takes the chance of his cus- tomer completing the intoxication thus began at the bars of less careful dealers and upon a lower grade of intox- icating liquors; and where legal damages result from such intoxication, each dealer is equally liable. See *Elshire v. Schuyler*, 15 Neb., 561.

By the 5th and 6th prayers the court is asked to tell the jury that the plaintiff cannot recover unless the death of Davis S. Worrall was caused solely by the traffic of the defendants. I understand the law to be otherwise, and that if—whatever the fatal cause was—if it was inspired or contributed to by the state of intoxication caused in whole or in part by the said traffic of the defendants, they are liable.

The 7th, 8th, 9th, and 10th prayers were predicated upon the theory that it is necessary to a recovery in an action of this kind that the death or damage should be the natural and logical result of the act of selling or giving intoxicating liquors, and that the traffic of the vendor must be the proximate and not the remote cause; also, that the death or damage must be such as might have been reasonably anticipated by a reasonable person.

In addition to what is above stated, attention is called to the provision of the statute. The language of section 13, chap. 50, when we consider the subject to which it is ap- plied, forbids the construction that the damages therein spoken of must be direct or proximate. In that sense, how is it possible that a traffic—that is, selling an article— could damage any one? Possibly the purchaser would be

directly and proximately damaged to the extent of the price, providing he paid for the article purchased, but clearly that is not the damages which the legislature had in view when they enacted the statute. Again, it is quite possible that an individual might be damaged by the use of the article trafficked in to the extent of his health or of his life. But who will say that the drinking of alcoholic liquors logically follows its sale and purchase. But how can the traffic logically or proximately damage the community? Clearly in no way, and the statute expressly provides that those engaged in the traffic shall pay all damages which the community may sustain by reason thereof. Such damages may be indirect and remote as long as they can be traced to the traffic as the inspiring, aggravating, or assisting cause.

It is not necessary, as it appears to me, that the damage should be such an one as might be foreseen or anticipated by a reasonable person as a consequence of such traffic, or that it should naturally flow therefrom.. A man under the influence of intoxicating liquor does not act naturally, nor do the rules laid down by Locke or Bacon afford any clue to the dark and devious paths which he may follow to his own destruction or that of others.

None of the instructions express the law as applicable to the facts of the case, and there was no error in their refusal.

The other points assigned as error in the petition in error, not being urged in the brief or at the hearing, will not be examined.

The judgment of the district court is affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.