WENZEL S. CHMELIR ET AL. V. MARY E. SAWYER
ET AL.

FILED OCTOBER 17, 1894. NO. 5611.

1. In an action on the bond of a saloon-keeper the fact essential to be shown is the disqualification to support those thereto entitled, caused or contributed to by sales of intoxicating liquors to one upon whom legally devolves the duty of furnishing such support, and this disqualification may be either partial in effect or limited in duration by reason of physical disability, or it may become complete, as by death.

2. Whether or not the disqualification alleged as partial, limited, or complete was contributed to by any or all of the defendants is a question of fact to be determined by the jury upon consideration of all the evidence adduced.

3. An affidavit for a new trial which only showed that the affiant was told by another person that certain physicians named had said that they believed that a *post mortem* examination held by them justified a certain theory as to the cause of death, was too remote a showing, even though the theory advanced would probably become an important factor in the retrial of the case wherein such affidavit was filed.

ERROR from the district court of Saline county. Tried below before BUSH, J.

*W. H. Morris*, for plaintiffs in error, cited: *Elshire v. Schuyler*, 15 Neb., 561; *McClay v. Worrell*, 18 Neb., 52; *Wardell v. McConnell*, 23 Neb., 152; *Kerkow v. Bauer*, 15 Neb., 150; *Jones v. Bates*, 26 Neb., 693; *Roose v. Perkins*, 9 Neb., 304; *Curran v. Percival*, 21 Neb., 442; *Murphy v. Curran*, 24 Ill App., 475; *Steele v. Thompson*, 42 Mich., 594; *Raymond v. Miller*, 34 Neb., 381; *Wasson v. Palmer*, 13 Neb., 378; *Morehead v. Adams*, 18 Neb., 569; *Sandwich Mfg. Co. v. Shiley*, 15 Neb., 109.

*W. Henry Smith, J. H. Grim*, and *A. G. Wolfenbarger*, *contra*, cited: *Roberts v. Taylor*, 19 Neb., 184; *Buckmaster*

*v. McElroy,* 20 Neb., 557; *Warrick v. Rounds,* 17 Neb., 411; *McDougal v. Giacomini,* 13 Neb., 431; *Gaunt v. Wainman,* 3 Bing. N. C. [Eng.], 67; *Marchant v. Errington,* 6 Bing. N. C. [Eng.], 79; *Bissell v. Spring Valley Township,* 124 U. S., 225; *Daggett v. Daggett,* 143 Mass., 516; *Phillips v. Root,* 68 Wis., 128; *Rantz v. Barnes,* 40 O. St., 43; *Arnold v. Barkalow,* 73 Ia., 183; Black, Intoxicating Liquors, sec. 300; *Miller v. Patterson,* 31 O. St., 419.

RYAN, C.

This action was brought in the district court of Saline county by the defendants in error against Vencil Kubicek and the sureties on his bond, Wenzel S. Chmelir and the sureties on his bond, and Frank Nedela and the sureties on his bond. Plaintiff Mary E. Sawyer sued on behalf of herself as the widow of Andrew J. Sawyer, deceased, and on behalf of the minor children of herself and the said Andrew J. Sawyer. The bonds above referred to were given in compliance with section 6 of chapter 50 of the Compiled Statutes. The facts charged as breaches of the conditions of the bonds aforesaid during the years 1888, 1889, and 1890, as against the principals Chmelir and Nedela, and upon the bond of Kubicek, which covered the time intervening between April 30, 1888, and April 30, 1889, and the resulting damages therefrom, were in the petition stated in the following language: "That the deceased, Andrew J. Sawyer, had been addicted more or less during the period aforesaid to the intemperate use of intoxicating liquors; that plaintiff personally notified said saloon-keepers, defendants, doing business in the city of Crete, aforesaid, on several different occasions, not to sell intoxicating drinks or liquors to said Sawyer, but they continued [selling intoxicating drinks and liquors to said Sawyer]; that by reason of such sales said Sawyer became so addicted to strong drink that he became unfit and unable to

take care of his family or himself and spent most of his time and money in said saloons; that his health became greatly impaired and his family were reduced to very destitute circumstances; that he was forced to mortgage and finally sell most of his stock and other necessary equipments for carrying on his work and thereby leaving himself without proper means for the support of his family and for carrying on the farming business in which he was engaged; that he left the farm upon which he had been living and moved to the city of Crete afterwards, to-wit, on the 10th day of March, 1890; that for some time previous to moving to said city of Crete he was in a state of intoxication a considerable portion of his time, hardly recovering from one period of intoxication until he was in another; that the defendants sold the liquor which produced said intoxication; that said saloon-keepers, defendants, sold and furnished said Sawyer intoxicating drinks and liquors steadily until afterwards, to-wit, on April 12, 1890, he visited the saloon of said defendants, and was by them furnished intoxicating drinks and liquor which he there drank, and by reason of said drinking became intoxicated; that he never returned to his home again; that afterwards, to-wit, on the 20th day of April, 1890, he was found in the Big Blue river dead; that the death of said Sawyer was caused by the intoxicating drinks and liquor sold to him and drank by him in the saloons of said defendants, producing said intoxication as aforesaid. The plaintiff further alleges that aside from the effects of the drink habit said Sawyer was possessed of good health, and when not drinking was industrious and possessed of good practical business ability; that he was a kind husband and father and provided well for his family, and was well capable of providing not only for their present comfort, but of making good provision for their future wants; that the plaintiffs were dependent upon the said Sawyer for their support; that the proceeds of his labor and earnings amounted to about the sum of $1,000 per

year, which he applied to the support of these plaintiffs; that the plaintiff and said minor children constitute one family and are entirely without the necessary means of support; that the plaintiffs have sustained damages in the premises in the sum of $10,000." There was an answer in the nature of a denial of each of the allegations of the petition, except such as described the relation of the plaintiff and her children to Andrew J. Sawyer, and the fact alleged in the petition that the defendants were engaged in the retail traffic of intoxicating liquors in the city of Crete, in Saline county, Nebraska, and had executed and filed bonds substantially in the terms alleged in plaintiff's petition. There were other averments of the answer which demand no consideration, because not insisted upon in argument; but there was in the answer a general denial of each averment of the petition not specifically admitted. By a supplemental answer the defendants averred that said plaintiffs recovered a judgment in said court for the sum of $700 on the 28th day of June, 1891, on account of damages sustained by said plaintiffs and in full of said damages by reason of the sale of intoxicating liquors to Andrew J. Sawyer during the time from and including May 1, 1888, until February 14, 1889, and that since said 29th day of June, 1891, the said judgment of $700 had been fully paid and the damages so sustained by said plaintiffs by the sale of said intoxicating liquors had been fully satisfied, and that all liability therefor on the part of the defendants had thereby been fully discharged. By reply the affirmative allegations of the answer were denied. There was a verdict and judgment in favor of the plaintiffs against the defendants for the sum of $1,500.

1. It is argued by the plaintiffs in error that the issue presented was as to the damages occasioned to the defendants in error by reason of the sale of intoxicating liquors to deceased on the 12th day of April, 1890, and that all else "is matter by way of recital of the happenings that

led to the event of death, but that the issue intended to be presented was that defendants in error have suffered in their means of support by reason of the excessive use of intoxicating liquors by Sawyer, furnished by plaintiffs in error on the 12th day of April, 1890, and that the death of Sawyer resulted therefrom, thereby rendering the loss to defendants in error permanent." In this construction of the petition we cannot concur. It is true the culmination of results attendant upon the sale of liquors charged was the death of Andrew J. Sawyer, on or soon after the 12th day of April, 1890, but the other matters alleged were such as partially withdrew, if they did not wholly destroy, the support to which the plaintiff and her children were entitled. It is true that just preceding the statement of the death of Andrew J. Sawyer it was alleged in the petition that the defendants furnished intoxicating drinks and liquors, which he drank, and by reason of which drinking became intoxicated. The connection between the intoxication and the death is stated in this language: That the death of Sawyer "was caused by the intoxicating drinks and liquors sold to him and drank by him in the saloons of said defendants, producing intoxication as aforesaid." The antecedent intoxication referred to may be that of the 12th of April, 1890. It is not, however, necessarily limited to the intoxication of that date. The petition alleged that for some time previous to moving to the city of Crete (on March 10, 1890), he was in a state of intoxication a considerable portion of his time, hardly recovering from one state of intoxication until he was in another. There is no such limitation contained in the petition as would restrict these allegations to any particular time or year, especially when it is borne in mind that preceding the above averments there were allegations in effect that Sawyer had, during the periods in which the plaintiffs in error were doing business, been addicted to the intemperate use of intoxicating liquors. A fair construction of the pleading

under consideration would refer the intoxication to which was attributable the death of Andrew J. Sawyer, as well to what had preceded that on the 12th day of April, 1890, as to the intoxication brought on by the sales of liquor to him on that day.    In *Elshire v. Schuyler*, 15 Neb., 561, it was held that the statute in effect declares the act of producing intoxication a wrong, and makes every one who has contributed to it by furnishing intoxicating liquors a wrong-doer and liable.    Section 15, chapter 50, Compiled Statutes, provides : " The person so licensed shall pay all damages that the community or individuals may sustain in consequence of such traffic; he shall support all paupers, widows, and orphans, and the expenses of all civil and criminal prosecutions growing out of or justly attributed to his traffic in intoxicating drinks; said damages and expenses to be recovered in any court of competent jurisdiction by a civil action on the bond named and required in section 6 of this act."    By section 16 of the same chapter it is provided : "It shall be lawful for any married woman, or any other person at her request, to institute and maintain, in her own name, a suit on any such bond for all damages sustained· by herself and children on account of such traffic."    As to the evidence necessary on a trial of a case of the kind above contemplated, it is provided in section 18 of this chapter that "in an action for damages brought by a married woman, or other person whose support legally devolves upon a person disqualified by intemperance from earning the same, it shall only be necessary to prove that the defendant has given or sold intoxicating drinks to such person during the period of such disqualification."    In apt language it was charged in the petition that the " disqualification" of the deceased arose in 1888 and was continued until his death, which occurred between April 12 and April 20, 1890.    As there was sufficient proof to show that each of the principals in the bonds referred to sold intoxicating liquors to Andrew J.

Sawyer within the period covered by the bond of each and while the disqualification of the deceased had existence, and as it was shown that the death of Andrew J. Sawyer simply rendered permanent and complete his previously existing disqualification, it results, in our opinion, that the defendant Kubicek, equally with the other saloon-keepers,—principals in the bonds sued on,—was properly held liable. This holding is not new in the jurisprudence of this state, for in the case of *Wardell v. McConnell*, 23 Neb., on page 152, this language is used: "There can be no apportionment of the damages among the different defendants. If they are liable at all, they are liable for the whole term of the disqualification, provided that during that time the principal, while held by the bond signed by his sureties, contributed to the disqualification by the sale of intoxicating drinks. (*Roose v. Perkins*, 9 Neb., 304; *McClay v. Worrall*, 18 Neb., 44.) If the disqualification terminated with the end of the license year, the further liability of the principal and his sureties would be thus ended; but if it continue without any intermission for a longer period, the liability must also be held to continue with it." In *McClay v. Worrall*, 18 Neb., on page 52, it is said: "By the fifth and sixth prayers the court is asked to tell the jury that the plaintiff cannot recover unless the death of David S. Worrall was caused solely by the traffic of the defendants. I understand the law to be otherwise, and that if—whatever the fatal cause was—if it was inspired or contributed to by the state of intoxication caused in whole or in part by the said traffic of the defendants, they are liable."

2. It is contended that the district court did not limit the right of recovery of the defendants in error, by instruction or otherwise, to such damages as were shown to have resulted from the disqualification of Sawyer after February 20, 1889, the date of filing the petition in the case of Mary E. Sawyer v. Albert Kempkas, for the recovery of damages on like grounds with those on which damages are

Chmelir v. Sawyer.

claimed in this case. This contention has led to a discussion between counsel for the respective parties as to the extent to which the doctrine of *res judicata* should be held applicable on account of the adjudication referred to. In the introduction of evidence no objection seems to have been made on the grounds stated; the court, however, instructed the jury thus: "4. In this action the defendants pleaded, by way of supplemental answer, that the plaintiffs herein have heretofore in an action in this court, wherein the same plaintiffs were plaintiffs and one Albert Kempkas and others were defendants, and that said supplemental answer contained an allegation that a judgment was recovered in said action for the same damages occurring during the same period, which damages are sued for and claimed in this action. Wherefore the jury are instructed that the plaintiffs will be estopped from recovering in this action for any of said items of damages included and considered in the action mentioned in said supplemental answer." Again, in instruction No. 3 the following language is used: "A recovery and satisfaction by the parties injured against one or more would constitute an effectual bar to any recovery against another or others who may have in part likewise contributed to cause the intoxication for such items of damages as the testimony in the case shows were litigated in any former action." Whether or not there was a technical estoppel is immaterial in view of the language employed in the instructions from which quotations have just been made. The plaintiffs in error could claim no more than that for the items for which a recovery was had in a former case, no further recovery should be permitted. The instructions required the jury to leave out of consideration all items for which a recovery had been had, thus rendering unavoidable the result for which plaintiffs in error contend.

It is further insisted that the jury were not properly instructed as to the measure of damages which should govern

the recovery of the defendants in error.   In this respect
the instructions are not as full and clear as is desirable in
such cases.   The second of the instructions asked by the
plaintiffs and given was in the following language :   " If
you believe the said Andrew J. Sawyer became disqualified
by intemperance for the support of his wife and children,
the plaintiffs, because of excessive drinking in the licensed
saloons of the defendants during the period of such licenses
as set forth in the plaintiffs' petition, and by means of such
traffic and drinking became periodically or frequently in-
toxicated so as to disqualify him for the support of his wife
and children, the plaintiff would be entitled to recover all
damages sustained by them by means of such traffic and by
means of such sales by defendants to said Andrew J. Saw-
yer while so intoxicated or under the influence of liquor."
It would perhaps have been better if there had been an
instruction which restricted the right of recovery to the
loss of support of Sawyer's wife and children in specific
terms.   It is probable, however, that the jury understood
the instruction just quoted as implying such a limitation.
In instruction No. 5, asked by the plaintiffs in error, the
limitation just referred to was embodied in express terms.
In the petitions in error, however, each assignment of error
as to the refusal to give this fifth instruction was coupled
with the conjunctive assignment as to the refusal to give
the first instruction asked by the plaintiffs in error, which
was to the effect that the contribution of liquor by the wife
to the intoxication of her husband would bar a right of
recovery in an action of this nature brought by her.   The
court properly refused the first instruction asked by the
plaintiffs in error.   We, therefore, cannot consider the al-
leged error as to the fifth instruction, for the reason that
the assignment is directed against the refusal as to both the
first and fifth jointly.

    3. The final contention of the plaintiffs in error is that
the district court erred in refusing a new trial because of

newly discovered evidence shown to exist by affidavits at-
tached to the motion for a new trial.    The chief affidavit
referred to was made by W. H. Morris, one of the attorneys
for the plaintiffs in error.    The other affidavit simply re-
ferred to that, and the affiants in each stated that they never
knew until after the trial of the existence of the facts stated
in the chief affidavit.    The material statements in the affi-
davit of W. H. Morris were as follows:  "That this affiant
knew not that any *post mortem* examination had ever been
had of the body of said Sawyer, and never learned of the
same until after this cause had been submitted to the jury
impaneled in above entitled cause, and only learned of the
same from one Pratt, a brother-in-law of the plaintiff, who
informed this affiant that within a few days after said de-
ceased Sawyer had been buried his body was taken up by
request and direction of the family and friends of said de-
ceased, and that they procured Doctors Baird of Pleasant
Hill, Butin and Painter of Dorchester to make such *post
mortem*, and that said doctors would testify and had so
stated from such *post mortem* they had concluded that said
Sawyer was not drowned, but was dead before he was
placed in the Blue river, and affiant further says that
knowledge of such facts and of the witnesses of them was
kept from the defendants by the plaintiffs."    It would seem
from these statements that the affiant W. H. Morris in his
affidavit simply stated what he had been told by Mr. Pratt
what three doctors had said was their opinion of the re-
sult of the *post mortem* examination of the body of Andrew
J. Sawyer, had several days after his death.    At best, the
testimony of alleged experts as to probabilities of the na-
ture of those above indicated is sufficiently unreliable when
given at first hands.    It would be unendurable if these
doubts were doubly intensified by the correctness of the
facts being made to depend upon two hearsay statements.
We conclude, therefore, that the district court was right in
holding that the showing as to newly discovered evidence

was insufficient to entitle the plaintiffs in error to a new trial. The judgment of the district court is

AFFIRMED.