TONY CORNELIUS ET AL. V. CAROLINE HULTMAN ET AL.

FILED APRIL 4, 1895.    No. 6055.

1. Intoxicating Liquors: DEATH FROM DRUNKENNESS: ACTION AGAINST SALOON-KEEPER: DAMAGES: QUESTION FOR JURY. H., a section foreman, left his home in company with a friend on a hand-car to transact business in the city of K., four miles distant, where they arrived about 5:45 P. M., and went direct to the saloon of C., and each drank whiskey. They returned to the saloon twenty or thirty minutes later and again drank whiskey, and where H. remained, except at short intervals, until nearly 11 P. M., in the meantime drinking three or four glasses of beer in said saloon. About the hour last named they started to return home on the hand-car, but were run down by a fast passenger train and H. instantly killed. One of the station men

Cornelius v. Hultman.

observing that the deceased was drunk and staggering, cautioned him against starting ahead of the passenger train, which was due to arrive in ten minutes. The evidence of C. tended to prove that they did not observe the train until about the instant of the collision, although both were aware that it was then due. *Held,* The question whether the liquor furnished by C. contributed to the fatal result so as to render him liable in an action under the statute by the widow of the deceased was properly submitted to the jury.

2. ———: ———: ———: EVIDENCE. It is immaterial whether the deceased was on account of drunkenness physically incapable of jumping from the hand-car, or whether he was thereby rendered insensible to the peril of his position until too late to escape. The foregoing evidence accordingly *held* admissible under an allegation that "Said H., on account of his drunken condition, was unable to alight from said hand-car and was struck," etc.

3. ———: ———: ———: ———. *Held,* On the evidence adduced, that the drunkenness of the deceased was the primary cause of the fatal accident, and that the court did not err in refusing to submit to the jury the question of the negligence of the railroad company.

4. Damages: EVIDENCE. Evidence examined, and *held* sufficient to sustain the verdict in favor of the plaintiff below.

ERROR from the district court of Buffalo county. Tried below before HOLCOMB, J.

*H. M. Sinclair,* for plaintiffs in error.

*Dryden & Main* and *Greene & Hostetler, contra.*

POST, J.

This was an action in the district court for Buffalo county by Caroline Hultman, widow of Gust Hultman, deceased, in her own behalf and in behalf of her minor children, against the plaintiffs in error on the bond of Tony Cornelius, a licensed saloon-keeper, for damages on account of the death of said Hultman, while under the influence of intoxicating liquors sold and furnished him by said Cornelius. A trial before the district court resulted in a verdict

and judgment for the plaintiffs therein, which it is sought to reverse by means of a petition in error addressed to this court.

The first proposition asserted in the brief of plaintiffs in error is that the verdict is not sustained by the evidence and should have been arrested on that ground. That contention necessitates a brief recital of the facts so far as disclosed by the record. On the night in question the deceased, who had for six years, last preceding been in the employ of the Union Pacific Railroad Company as section foreman at Buda, a station on its main line, left home in company with one Carlson, going to Kearney, about four miles distant, on a hand-car for the purpose of procuring provisions for his family. About 11 o'clock of the same night he started for his home on the hand-car but was run down and killed by a passenger train before reaching his destination. Carlson, who accompanied the deceased, testified that they visited the saloon mentioned in the pleadings about fifteen minutes before 6 o'clock, where each took a drink of whiskey. They then left the saloon for the purpose of making their purchases, in which they were engaged from twenty to thirty minutes, when they returned to the saloon and took a second drink of whiskey. They remained there, in the language of the witness, "talking and fooling around" until a few minutes before 9 o'clock, when, being admonished by the clerk in the grocery store that he was about to close for the night and to go and get the goods purchased by them, the deceased requested the witness to get the groceries and take them to the hand-car, which the latter did, remaining at or near the car until the arrival of the deceased, nearly two hours later. After their return to the saloon from the grocery store the deceased, in addition to the two drinks of whiskey, drank three or four glasses of beer. Mr. Birch, an employe in the freight office at Kearney, testified that he met the deceased about 11 o'clock, at which time the latter was drunk and staggered constantly

while assisting Carlson to put the hand-car on the track, and that he, witness, warned him not to start ahead of the passenger train which was due in about ten minutes. An inquest was held under the direction of the coroner the following day, at which Cornelius, the proprietor, testified that the deceased drank beer in his saloon the night of his death, and purchased a bottle of liquor which he carried away. Dr. Humphreys, the coroner who examined the person of the deceased, found thereon a broken bottle which had recently contained whiskey. John Campbell, proprietor of a saloon on the same street and directly opposite that of the plaintiff in error Cornelius, testified that deceased visited his saloon the night of his death and appeared to the witness to be then intoxicated. On the other hand, Mr. Downing, the barkeeper, testified that the deceased drank nothing in the saloon of plaintiff in error Cornelius that night and was apparently sober when he left. Messrs. Walker, Toole, and Barnes, who saw him in the saloon about the time he left, testified that he appeared to be sober, while Mr. Hawkins testified that he drank two or three and maybe four glasses of beer with the deceased in the saloon of plaintiff in error Cornelius that night, and assisted him to put the hand-car on the track, but that he, deceased, "wasn't excited by drink or anything of that kind."

The question at issue was whether Cornelius in person or by his servants furnished to the deceased intoxicating liquor on the night in question which caused or contributed to the result stated. (*McClay v. Worrall*, 18 Neb., 44; *Jones v. Bates*, 26 Neb., 693; *Elshire v. Schuyler*, 15 Neb., 561.) That the evidence adduced by the plaintiffs below tends to establish the affirmative of that issue cannot be doubted. It is not the province of this court to critically weigh the evidence. That is a function of the jury under the instruction and guidance of the trial judge; and a verdict or finding will not be disturbed on account of a mere difference of opinion between this court and the jurors who

personally saw and heard the witnesses, and are therefore better qualified to judge of their credibility. Such is the rule universally recognized in appellate proceedings, and is without doubt applicable to the facts of this case.

Another objection argued under this assignment is that the evidence is not responsive to the allegations of the petition, which, after charging the sale of liquor to Hultman, in consequence of which the latter became intoxicated, concludes as follows: "The said Gust Hultman   *    *    * while on his way home was overtaken by one of the trains of the Union Pacific Railroad Company, and because of his drunken and intoxicated condition he was unable to alight from said hand-car and was struck by said railroad train," etc. In addition to the evidence above summarized, Carlson, who was with the deceased on the hand-car, testified that he jumped the instant he saw the head-light of the engine, and had barely touched the ground when the collision occurred. There is no evidence that the deceased saw the approaching train or was aware of its presence until Carlson cried, "Jump, the train is on us!" The witness was further interrogated as follows:

Q. Did he jump?

A. No.

Q. What happened?

A. I do not know, because as I touched the ground the engine struck the hand-car."

The point made on this record is that the fatal injury was occasioned, not by the inability of the deceased to alight from the hand-car, but on account of his failure to observe the train; or, to state the proposition in the language of counsel for plaintiffs in error, "The real question is, was Hultman incapacitated by liquor to such an extent that by reason thereof he was unable to escape the danger that was upon him, or is it a fact that he was not apprised of the danger until too late to escape?" We are unable to perceive the force of this reasoning. That the deceased was

unable to safely alight from the hand-car after he observed the passenger train is conceded by the plaintiffs in error, and satisfactorily established by the evidence of Carlson; and whether his incapacity was a physical one, or was due to mental obtuseness which rendered him insensible to the peril confronting him until too late to make his escape, cannot be regarded as material, provided the primary or responsible cause thereof was the intoxication alleged.

The next assignment is the giving of instruction No. 8 by the court on its own motion as follows:

"If you find from the evidence that the deceased was under the influence of intoxicating liquors, furnished in whole or in part by the defendant Cornelius, at the time of his death, and that because of such intoxication he was unable to exercise the care and precaution he otherwise would have done, and that because of such intoxication he was unable or did not get off of the hand-car and out of the way of the approaching train, then the defendants would be liable, notwithstanding the railroad may also have been guilty of negligence.

"It is not material in this action whether the employes of the railroad were negligent or not, or whether or not the railroad company is liable for damage, if any, sustained by the plaintiffs; the question for you to determine is, whether the deceased was intoxicated at the time of his death, and whether the defendant Cornelius furnished the intoxicating liquors, or some part thereof, and whether in consequence of such intoxication he lost his life."

The objection to the first paragraph of this instruction is that it is unwarranted by the pleadings or proofs, there being no allegation that the deceased was intoxicated to such a degree that he was unable to exercise the care essential to insure his safety. Substantially the same objection was noticed under the preceding assignment. It is only necessary to add that on the record presented the trial court was fully warranted in submitting to the jury the question

Cornelius v. Hultman.

stated, and that the finding is not so decidedly against the weight of the evidence as to call for interference in this proceeding.

The objection to the second paragraph should be considered in connection with instruction No. 4 requested by defendants below, viz.:

"If the negligence of the railroad company contributed to the death of the deceased, so that you cannot say that the deceased would have been killed but for such negligence, you will find for the defendant, although you may further find that the defendant Cornelius sold liquor to the deceased, which the deceased drank, and that the deceased was drunk at the time of his death."

The contention with respect to this branch of the case is that the negligence of the railroad company contributed to the death of the deceased and for which it might be answerable in a proper proceeding, is a sufficient defense to the cause of action here alleged. A sufficient answer to that claim is that it is entirely unsupported by the answer which is in the form of a general denial. But the fallacy of that argument is apparent also when viewed in the light of common law principles without any reference to the liability of a saloon-keeper under our statute. In *St. Joseph & G. I. R. Co. v. Hedge*, 44 Neb., 448, decided at the present term, it was said that when subsequent to the alleged wrongful act a new and independent cause has intervened sufficient of itself to stand as the cause of the injury, the original cause will be deemed too remote to be made the basis of a recovery. But where the evidence discloses a succession of events so linked together as to make a natural whole, and all so connected with the first event as to be in legal contemplation the natural result thereof, the latter will be deemed the primary cause. The most that can be claimed for the evidence bearing upon the subject is that while the trainmen may have been negligent in not discovering the hand-car on the track, the primary

cause of the collision was the reckless conduct of the deceased in starting on the hand-car ten minutes before the fast train was due to leave Kearney. The instruction of the court was on the facts of the case proper, and that asked by the plaintiffs in error was rightly refused. But the ruling assigned must be sustained for another reason. Under the provision of our statute it is not necessary in an action of this character to prove that the liquor furnished by the defendant was the sole or even the principle cause of the injury alleged. (See cases above cited.)

Evidence was offered and rejected tending to prove that the defendant in error, Mrs. Hultman, had settled with the railroad company and received thereby satisfaction for the death of her husband. That ruling was certainly right for the reason, as we have seen, that the evidence offered was not responsive to any issue of the pleadings.

It is also alleged that the court erred in denying the plaintiffs in error leave to amend their answer so as to charge settlement with the railroad company. But that assignment is unsupported by any evidence of such a request or refusal.

There are other assignments in the petition in error, but they are not mentioned in the brief of counsel, and, following the settled practice of this court, will not be noticed in this opinion. We find no error in the record and the judgment must be

AFFIRMED.