JOHN L. SCHIEK ET AL. V. NANCY SANDERS ET AL.

FILED FEBRUARY 2, 1898. No. 7827.

1. **Intoxicating Liquors: ACTION AGAINST SALOON-KEEPER: DAMAGES.** Damages awarded *held* not excessive under the evidence.

2. ————: EVIDENCE OF INTOXICATION: LICENSE. Evidence examined, and *held* to sustain the finding of the jury that the deceased, at the time he was injured, was intoxicated from drinking liquor furnished him by the plaintiff in error, and that plaintiff in error was a licensed saloon-keeper at the time of furnishing the deceased such liquor.

3. ————: EVIDENCE OF LICENSE. In a suit by a widow against a saloon-keeper to recover damages for loss of support resulting from her husband's death, alleged to have been caused by his intoxication from drinking liquors furnished by plaintiff in error, when the issue is whether the plaintiff in error was a licensed saloon-keeper, proceedings of the city council showing the granting of a liquor license to the plaintiff in error, and the record of liquor licenses kept by the city clerk, showing that a liquor license had been granted to the plaintiff in error, are competent and sufficient evidence to sustain a finding that the plaintiff in error was a licensed dealer in intoxicating liquors. To prove the affirmative of such an issue the production in evidence of the actual license issued is not essential.

4. ————: SALES: LIABILITY OF SALOON-KEEPER AND SURETIES. A licensed dealer in intoxicating liquors, · and the sureties upon his bond, are liable for the loss of support sustained by the widow and children of a decedent, whose death was contributed to by intoxicating liquors drank by the deceased and which were furnished him by the liquor dealer.

ERROR from the district court of Gage county. Tried below before BUSH, J. *Affirmed.*

*Alfred Hazlett* and *Fulton Jack*, for plaintiffs in error.

*George Arthur Murphy* and *William C. Le Hane*, contra.

RAGAN, C.

On the evening of April 14, 1893, E. J. Sanders boarded a passenger train of the Rock Island Railway Company at Beatrice, Nebraska, for the purpose of going to his

home at Harbine, a station near by, and while alighting or attempting to alight from the train at Harbine he was injured, from the effects of which he died on the 17th of the same month. His widow, Nancy Sanders, in behalf of herself and her four minor children, in the district court of Gage county, brought this suit against John L. Schiek and others, being licensed dealers in intoxicating liquors and the sureties on their bonds, for damages for loss of support and maintenance which she and her children had sustained by reason of the death of the husband and father, basing her action upon the ground that the saloon-keepers had sold or furnished to said Sanders at Beatrice, Nebraska, on the date of his injury, intoxicating liquors, which he there drank and which caused his intoxication, and that the injuries from which he died resulted from his being intoxicated by the liquors so sold and furnished him. Mrs. Sanders had a verdict and judgment, and the defendants below, who were held liable, have brought the same here for review on error.

1. The first argument is that the damages awarded Mrs. Sanders by the jury are excessive, appearing to have been given under the influence of passion or prejudice. The jury awarded Mrs. Sanders $850 damages. The amount prayed for in the petition was $5,000. The evidence shows, without conflict, that Sanders, prior to his injury, was a healthy man, thirty-eight years of age; that he was a mechanic capable of earning, and had been earning for some years immediately prior to the time of his injury, about $3 per day; that he devoted his earnings to the support and maintenance of his family, consisting of his wife and four minor children, the oldest being twelve years of age; that his death left his widow and children without means of support, except what the widow earned by washing. Sanders' expectancy of life at the time of his death was more than twenty-five years. We find nothing in the record which indicates that the jury was influenced by passion or prejudice, at least against these plaintiffs in error, in making this award,

The evidence would have sustained a verdict for all claimed in the petition.

2. A second argument is that the verdict is not sustained by sufficient evidence. One of the contentions on which this is based is that one Blanchard, a brother-in-law of the deceased, was a witness for the plaintiff below, and plaintiffs in error contend that they impeached his testimony. Blanchard testified on the trial in behalf of Mrs. Sanders to being in company with the deceased in Beatrice most of the day on which he was injured; that he was present with him in the saloons of the plaintiffs in error, and that Sanders drank from fifteen to twenty drinks of whisky and a number of drinks of beer; in short, that he was in the saloons of the plaintiffs in error on the day he was injured, drank intoxicating drinks therein which were furnished him by the plaintiffs in error, and was drunk from the effects of the liquor drank at the time he left Beatrice, about 8 o'clock in the evening, for his home at Harbine. Certain witnesses testified on behalf of the plaintiffs in error that Blanchard testified at the coroner's inquest held over the body of Sanders on April 17 to the effect that Sanders was not drunk in Beatrice on the 14th; or, in other words, witnesses testified to statements made by Blanchard on April 17 and other times which tended to contradict the testimony he gave on the trial of this case. But we cannot say that the verdict lacks evidence to support it because of this attack upon the credibility of Blanchard. Notwithstanding the attack upon his testimony the credibility of his evidence was still for the jury. Furthermore, if the entire evidence of Blanchard be eliminated from the record, the evidence still sustains the finding of the jury that the plaintiffs in error furnished Sanders liquor on April 14 from which he became intoxicated, and that his intoxication caused the injury from which he died. Various witnesses testified that Sanders and Blanchard were together in Beatrice on April 14; were in the saloons of plaintiffs in error drink-

ing intoxicants as late as 5 o'clock in the evening. Mrs. Blanchard testified that her husband and the deceased were at her house between 1 and 2 o'clock in the afternoon and that they were both drunk at that time; that they returned later in the evening, about 6 o'clock, and that Sanders was drunk at that time; that she tried to induce him to remain at her house over night because of his intoxicated condition. Other witnesses testified to Sanders being in a store in the afternoon and buying or negotiating for a jacket or blouse which he tried on; that he was then intoxicated and acted foolishly, and that he attracted the attention of the lady clerks to his intoxicated condition by remarking that he looked well enough in that jacket for a Sunday school superintendent. Another disinterested witness testified to meeting Sanders near 6 o'clock P. M. in the saloon of the plaintiffs in error; that Sanders drank intoxicants in the saloon at that time; that he was drunk, and though he was a stranger to the witness he shook hands with him and called his attention to the fighting qualities of a dog he had with him. This is not all the evidence, but it is sufficient to show that the finding of the jury that Sanders was drunk in Beatrice on the evening of April 14 from drinking liquors furnished him by the plaintiffs in error is sustained by the evidence.

A second argument under the contention that the verdict lacks evidence to sustain it is this: The petition alleges that the plaintiffs in error were licensed saloonkeepers. The answer denies this. The plaintiffs in error insist that the record contains no proof that they were licensed saloon-keepers on April 14, 1893. This contention is untenable. On the trial there were introduced in evidence the applications made by the plaintiffs in error for license to sell intoxicating liquors for the year ending May 1, 1893, the public notices given by them of such application as required by the statute, the bonds executed by the saloon-keepers in pursuance of the provisions of the statute, the proceedings of the city

council granting them licenses to sell intoxicating liquors for the ensuing year, and the "license book" kept by the city clerk which recited that licenses had been issued to the plaintiffs in error, the date thereof, the amount of the license fee, and when the license expired. It is true that the actual paper, certificate, or license, if one was actually issued by the city council or the clerk and delivered to the plaintiffs in error, was not produced in evidence; but if such a paper existed it did not belong in the office of the city clerk; if it had ever been issued, it was delivered to the plaintiffs in error and was presumably in their possession. The evidence offered by the plaintiffs below upon this subject was sufficient to sustain the jury's finding that the plaintiffs in error were on April 14, 1893, duly licensed saloon-keepers in the city of Beatrice.

3. The third argument is that the court erred in giving to the jury the following instruction: "The court instructs the jury that it is not necessary in order to warrant a recovery in this case that the intoxication of E. J. Sanders, deceased, by means of intoxicating liquors sold or given away by any of the defendants herein to him be the direct, natural, and proximate cause of the death of said E. J. Sanders; but if the jury shall find that the use of intoxicating liquors, directly or indirectly, contributed towards or assisted in producing the death of said E. J. Sanders, and that all or any part of the intoxicating liquors so used by the said E. J. Sanders were sold or given away to him by defendants, * * * or any of them, then your verdict shall be in favor of the plaintiffs and against the defendants, or such of them as were guilty of such wrongful act." The criticism upon this instruction is that it lays down the rule that a saloon-keeper and the sureties on his bond are liable to the widow and children of a decedent for their loss of support if the decedent's death was contributed to by intoxicating liquors drank by the decedent which were furnished him by the saloon-keeper. The contention of

the plaintiffs in error is that the liability of the saloon-keeper only attaches where it is shown that he furnished liquor to the decedent and his drinking of the same and his intoxication therefrom were the direct and proximate causes of his death. But by an unbroken line of decisions of this court in construing the liquor law of the state (Compiled Statutes, ch. 50) it is now established that a saloon-keeper and the sureties upon his bond are liable for the loss of support sustained by a widow and children of a decedent whose death was contributed to by intoxicating liquors drank by the deceased and which were furnished him by the saloon-keeper. The court did not err in giving this instruction. (See, among others, the following authorities: *Roose v. Perkins*, 9 Neb. 304; *Kerkow v. Bauer*, 15 Neb. 150; *Elshire v. Schuyler*, 15 Neb. 561; *McClay v. Worrall*, 18 Neb. 44; *Wardell v. McConnell*, 23 Neb. 152; *McManigal v. Seaton*, 23 Neb. 549; *Jones v. Bates*, 26 Neb. 693; *Sellars v. Foster*, 27 Neb. 118; *Uldrich v. Gilmore*, 35 Neb. 288; *Chandler v. Sawyer*, 42 Neb. 362; *Cornelius v. Hultman*, 44 Neb. 441; *Gran v. Houston*, 45 Neb. 813.)

4. A final argument is that the court erred in refusing to instruct the jury that no evidence had been adduced before them showing that the plaintiffs in error were on April 14, 1893, licensed saloon-keepers in the city of Beatrice, and that they should therefore return a verdict in their favor. For reasons already stated the court did not err in refusing to so instruct the jury.

There is no error in the record and the judgment of the district court is

AFFIRMED.