Gran v. Houston.

JOHN GRAN ET AL. v. MARY J. HOUSTON ET AL.

FILED SEPTEMBER 18, 1895. No. 7120.

1. **Trial:** INSTRUCTIONS: REPETITION OF PROPOSITIONS. Where, in order to fairly and intelligibly present all the issues in a case to the jury by the instructions, it becomes necessary to repeat a

proposition, its repetition, in proper connection with other facts or principles involved, is not erroneous.

2. ——: ——: ——. It is not ground for the reversal of a case that the trial court repeated a proposition of law in its instructions, where it does not appear that the effect was to perplex or mislead the jury.

3. **Intoxicating Liquors**: Loss of Support: Damages: Slocumb Law: Bond of Saloon-Keeper. Within the meaning of the words "all damages" in what is known as the "Liquor" or "Slocumb Law" (Compiled Statutes, ch. 50), and required by the law to be a condition of the bond given by each person licensed to sell intoxicating liquors, is included the loss of means of support of a wife and the children of the husband, who, by drinking liquors sold or given to him in whole or in part by the vendor, principal in the bond, or his agents or employes, becomes intoxicated, and, by the intoxication, disabled or disqualified, physically or mentally, either partially or totally, for labor; also his death caused by the intoxication.

4. ——: Action for Loss of Support. The action accorded by this act for the death caused by intoxication is not an action proper for the death, but for the loss of means of support resulting from the death.

5. **Action Upon Saloon-Keeper's Bond**: Liability of Sureties. In an action upon the bond the liability of the sureties is co-extensive with that of the principal, and to the extent of the sum therein stated they are bound for the payment of all damages adjudged against him, and testimony which in such action establishes his liability fastens it upon the sureties.

6. **Statutes**: Rule of Construction. It is a rule of interpretation, universally accepted, that in giving construction to a statute the court will consider its policy and the mischief to be remedied and give it such an interpretation as appears best calculated to advance its object by effectuating the design of the legislature. (*Wilber v. Paine*, 1 O., 255.)

7. **Intoxicating Liquors**: Action on Bond of Saloon-Keeper: Loss of Support: Evidence. "In an action on the bond of a saloon-keeper the fact essential to be shown is the disqualification to support those thereto entitled, caused or contributed to by sales of intoxicating liquors to one upon whom legally devolves the duty of furnishing such support, and this disqualification may be either partial in effect or limited in duration by reason of physical disability, or it may become complete, as by

Gran v. Houston.

*death.*" Rule announced in first paragraph of *Chmelir v. Sawyer*, 42 Neb., 362, approved and followed.

8. Instructions : HARMLESS ERROR. Where there is no controversy in the evidence as to the existence of a particular fact, an instruction given in which there is an assumption of its truth will not furnish sufficient reason for a reversal of the judgment.

9. Damages : FAILURE TO REQUEST PROPER INSTRUCTIONS. An instruction given in regard to the rule for estimating damages, *held*, correct and proper to the extent that it stated the rule, and, further, that if the defendants desired a more extended or explicit statement upon any portion of the subject therein embraced, it should have been prepared and presented to the court with a request that it be read. Failure to do so precludes error.

10. Objections to Instructions. An objection to instruction numbered 16, in which it was stated that certain admissions were made in the answer, *held*, not well founded.

11. ———. Objections to the language employed in certain of the instructions examined, and *held* not tenable.

12. Intoxicating Liquors : SALE TO HUSBAND: ACQUIESCENCE BY WIFE: DAMAGES. The fact that the wife consented to or acquiesced in the sale or gift of intoxicating liquors to the husband is no defense or bar to an action for damages by the wife and in behalf of her minor children for loss of means of support through the disability or disqualification of the husband for labor caused by drinking the intoxicating liquors.

13. Pleading. In order to be available in an action, new matter constituting a defense must be pleaded in the answer. It cannot be introduced under a general denial.

14. Intoxicating Liquors : DEATH BY INTOXICATION: INSTRUCTIONS. Refusal to give instructions requested on the question of the proximate cause of the death of a person alleged to have been caused by intoxication, *held*, not erroneous within the rule announced in *McClay v. Worrall*, 18 Neb., 44, *Sellars v. Foster*, 27 Neb., 119, and *Cornelius v. Hultman*, 44 Neb., 441.

15. Verdict : IMPEACHMENT: TESTIMONY OF JUROR. The testimony of jurors in relation to matters which are essentially inherent in the verdict is incompetent and will not be received to impeach the verdict.

16. Damages from Sale of Liquor : AMOUNT OF VERDICT: EVIDENCE. The verdict, in its amount, when viewed in connection with the evidence, *held* to show that it was not the result

of the influence of passion and prejudice, but sustained by the testimony.

17. **Trial**: JURY.    The action of the court in excusing jurors *held* not erroneous.

18. **Witnesses**: ORDER OF EXCLUSION : EFFECT OF DISOBEDIENCE. Where an order has been entered excluding the witnesses and a witness is called who, it appears, has disobeyed the order and has been present in court during the examination of a prior witness, and it further appears that the evidence of the witness called will be upon a branch of the case entirely different and distinct from that testified upon by the witness preceding him and have no connection in substance therewith, and it does not appear that the party desiring to use the witness was at fault in any manner for his disobedience of the order of exclusion, it is not error for the court to allow the witness to testify.

19. **Rulings on Evidence**: EXCEPTIONS : REVIEW.    In order to render an alleged error in the admission of testimony available in a review of a case by this court the record must disclose an objection made in the trial court to the introduction of the particular piece of testimony, a ruling obtained thereon, and, if adverse, an exception taken.

20. **Misconduct of Attorney**: OBJECTIONS : RECORD FOR RE-VIEW.    Where it is assigned for error that there was misconduct of an attorney for the prevailing party during the course of argument to the jury, consisting of language used or statements made prejudicial to the rights of the adverse party, the attention of the trial court must be called to the language or statements by an objection, and, if overruled, an exception taken, and this portion of the proceedings incorporated in the bill of exceptions.    It will then be reviewed by this court ; otherwise not.

21. **Evidence to Show Manner of Death.**    Where, so far as the evidence discloses, no one was present at the time of the death of deceased, *held*, that the evidence of the coroner, who was also a physician and surgeon, in which he stated his opinion on the subject, was admissible to show the manner of death.

22. **Trial**: WITNESSES : RULING ON MOTION TO STRIKE OUT AN-SWER.    Where a question is asked of a witness, and his answer, which is responsive to the question, is received without objection and motion is then made by counsel to strike out the evidence contained on the ground of its incompetency, it is discretionary with the court whether it will sustain the motion or not.

23. **Intoxicating Liquors:** DAMAGES FROM SALE: EVIDENCE. "The fact that a saloon-keeper, prior to the sales complained of in a civil damage case, had instructed his servants not to sell liquor to the deceased, is inadmissible in evidence as not tending to prove that such sales were not in fact made." The rule announced in the third paragraph of the syllabus in *Houston v. Gran*, 38 Neb., 687, followed and adhered to.

24. ———: ———: ———. Evidence which tended to prove that the money earned by the husband while living was the source of and devoted to the support of the wife and children, *held*, admissible.

25. ———: ———: ———. The ruling of the court as to the admissibility of certain evidence during the cross-examination of one of the defendants in regard to his connection with the saloon business examined and approved.

26. **New Trial:** NEWLY-DISCOVERED EVIDENCE. A motion for new trial will not be granted on account of newly-discovered evidence, unless it would be sufficient to render clear what was before doubtful or of so controlling a nature as to probably change the verdict.

27. **Misconduct of Jury:** EVIDENCE. The statements of an affidavit in relation to the misconduct of a juror, examined, and *held* insufficient.

ERROR from the district court of Lancaster county. Tried below before STRODE, J.

*G. M. Lambertson,* for plaintiff in error.

*Ricketts & Wilson, contra.*

HARRISON, J.

On the 5th day of December, A. D. 1889, Mary J. Houston, for herself and on behalf of her minor children, instituted this action in the district court of Lancaster county against John Gran, a retail dealer in liquor in the city of Lincoln, and the sureties on his bond, Jerry Harrington and Thomas Carr. In the petition it is alleged that on the 30th day of March, 1889, John Gran was engaged in the business of selling malt, spirituous, and vi-

56

nous liquors in the city of Lincoln, under a license author-
izing him to conduct such a business, granted to him on or
about the 11th day of April, 1889, by the proper authori-
ties of the city; that on March 19, 1889, John Gran, to-
gether with Thomas Carr and Jerry Harrington, as his
sureties, entered into a bond to the state of Nebraska in the
sum of $5,000, and which bond contained the conditions
required by our statutory law regulating the execution of
such bonds; "that on the 13th day of March, 1889, the
plaintiff Mary J. Houston was, and for more than fifteen
years prior thereto had been, the wife of one James Hous-
ton, now deceased, and that said Houstons were residents
of the city of Lincoln, Lancaster county, Nebraska, and
the other plaintiffs are their lawful children.

"4. That on the 30th day of March, 1889, the said
James H. Houston, deceased, her husband and the father
of the plaintiff's children, became greatly intoxicated and
continued in a fit of intoxication the whole of the said day
and evening of the 30th day of March, 1889, and that he
spent the afternoon and evening of said day in the saloon
and place of business of the defendant John Gran in said
county and said state.

"5. That the defendant John Gran sold, gave, and fur-
nished to him, the said James H. Houston, the liquors that
caused his intoxication on the said 30th day of March,
1889, and furnished him the said liquors in sufficient
quantities to cause his intoxication, and did cause his intoxi-
cation, and he continued to sell and furnish liquors to said
James H. Houston, deceased, after he had become so intoxi-
cated.

"6. That on the evening of the said 30th day of March,
1889, the said James H. Houston, while intoxicated from
the effects of the liquors so sold and given and furnished to
him as aforesaid, in so much so as to not be able to care for
himself or protect his person from surrounding danger,
wandered upon the tracks of the Chicago, Burlington &

Quincy Railroad Company in said city of Lincoln in the dark of the night, where he was, by reason of said intoxication and his debauched and imbecile condition caused by said liquor, run over and killed by the cars of said company, and where he was subsequently found, mutilated by the trains of said company.

"7. The plaintiffs were all dependent upon the said James H. Houston for their means of support, and the proceeds of his labor and earnings amounted to about $1,500 per year, which he applied to the support of these plaintiffs; that he was about forty years of age, healthy, energetic, and industrious, and a skilled mechanic.

"8. The plaintiff Mary J. Houston and said minor children constitute one family, and are entirely without the means of support. The plaintiffs have sustained damages in the premises in the sum of $5,000, together with interest thereon from the 30th day of March, 1889."

The prayer of the petition was for judgment in the sum of $5,000, interest, and costs. To the petition Gran and his sureties filed the following answer: "They admit that John Gran was engaged in the business of selling malt, spirituous, and vinous liquors under a license duly granted by the city of Lincoln at the time and place mentioned in the petition. They also admit that they executed and delivered a bond to the city of Lincoln, and that the bond in question is described in the plaintiffs' petition, but they deny each and every other allegation contained in said petition except as herein expressly admitted." A trial of the issues resulted in a verdict against Gran and his sureties in the sum of $100. This, in an error proceeding to this court on the part of Mrs. Houston and the children, was reversed and the case remanded to the district court. For report of this decision see 38 Neb., 687. In the second trial of the case in the district court Mrs. Houston and the children recovered a verdict for $5,000. A separate motion for new trial was filed for Jerry Harrington and a joint one for

John Gran and Thomas Carr, which were, on hearing, over-ruled and judgment rendered in accordance with the verdict. A separate petition in error has been filed in this court on behalf of Harrington and a joint one for the other two interested parties, Gran and Carr, to obtain a review of the proceedings during the trial of the case in the district court.

The first error of which complaint is made and argued in the brief filed for plaintiff in error is therein stated as follows: "The trial judge erred in the instructions given as a whole and in giving undue prominence to the idea that the amount of liquor furnished and the time when given, and the condition of the deceased as to being drunk or sober, was of little importance." It is ably and strenuously contended that the proposition that "every person who sells or gives intoxicating liquors to another, and thereby in whole or in part causes such intoxication of such person, is liable for the consequences of such intoxication" was given and many times in different form or phrase and in several instructions repeated, and thus undue prominence was given to the idea expressed, to the exclusion of other important issues in the case; that the tendency was to mislead the jury and that it had the effect of misleading the jury. As the result of a careful examination of the instructions in which any expression appears in reference to the particular idea or portion of the issues which it is claimed was unduly repeated in connection with the other instructions given and the testimony adduced during the trial, we are convinced that they are not open to the criticism made by counsel, at least not to the extent urged in the argument. It was necessary in properly instructing the jury as to the different phases of the case as presented by the evidence to embody this idea in several of the instructions; and while there may have been repetitions which were not necessities, or which in the opinion of counsel or this court were unnecessary, yet there were none which

tended, nor did they as a whole tend, to mislead the jury, nor can we believe the jury was misled by them, hence there was no prejudice to the rights of plaintiff in error, and the action of the court, the grounds for this complaint, furnishes no tenable reason for a reversal of the case. (*See-brock v. Fedawa*, 30 Neb., 424; *Carstens v. McDonald*, 38 Neb., 858; *Hill v. State*, 42 Neb., 503.)

It is further urged that the instructions were unfair and erroneous in so far as the rights and interests of the sureties on the bond were involved, and that a distinction should be drawn between the liability of the sureties upon the bond of a liquor dealer and that of the principal, and, as against the surety, the proof that the injuries were the direct result of the intoxication caused by the principal in the bond should be of the clearest character; that, quoting from the opinion in *Curtin v. Atkinson*, 36 Neb., 110, "An undertaking will be strictly construed in favor of sureties, and their liability will not be extended by construction beyond their specific agreement." The rule announced in that case was applied to sureties on statutory bonds of retail liquor dealers. The condition of the bond required by statute to be given by a retail liquor dealer is "that he will not violate any of the provisions of this act; and that he will pay all damages, fines, and penalties and forfeitures which may be adjudged against him under the provisions of this act," (Compiled Statutes, sec. 6, ch. 50, entitled "Liquors,") and to this the sureties bind themselves. In section 15 of the same chapter it is provided: "The person so licensed shall pay all damages that the community or individuals may sustain in consequence of such traffic, he shall support all paupers, widows, and orphans, and the expenses of all civil and criminal prosecutions growing out of, or justly attributed to, his traffic in intoxicating drinks; said damages and expenses to be recovered in any court of competent jurisdiction by any civil action on the bond named and required in section 6 of this act, a copy of which, properly

Gran v. Houston.

authenticated, shall be taken in evidence in any court of justice in this state;" and in section 16: "It shall be lawful for any married woman, or any other person at her request, to institute and maintain, in her own name, a suit on any such bond for all damages sustained by herself and children on account of such traffic, and the money when collected shall be paid over for the use of herself and children." It is clear that the sureties, by signing the bond, bind themselves that the principal shall pay "all damages" for which he may become liable under the provisions of the liquor act, or, as it is popularly designated, "Slocumb Law," and that such damages may accrue to any individual and be recovered by civil action on the bond, and the term "individual" includes a married woman who may sustain any damages on account of the traffic in liquors by the vendor, principal in the bond, and that her suit may be for all damages sustained by herself and her children. Within "all damages" is included loss of means of support, and within "means of support" the disability or disqualification of a husband through intemperance caused by drinking liquors, either partial or total, physical or mental, as partial or total insanity caused by intoxication and incapacitating for labor; also the death, not in an action for the death of the party, except in that its eventuating from the intoxication, causes a loss of support. The liability of the sureties with reference to the damages is co-extensive with that of the principal in the bond, and to the extent of the sum therein named they are bound for the payment of all damages adjudged against him, and the testimony which establishes a liability against him in an action on the bond fastens it upon them; and the instructions in this case which it is claimed were objectionable, and more particularly so in their effect upon the interests of the sureties, if competent and unobjectionable when viewed as affecting the rights and liabilities of the principal in the bond, were equally so as to the sureties and their liabilities arising from their contract evidenced by the bond.

Some particular stress is given by counsel, in the argument, to the use of the word "injured" in section 6 of the liquor law, in the portion thereof wherein it is stated: "Any bond taken pursuant to this section may be sued upon for the use of any person or his legal representatives, who may be injured by reason of the selling or giving away any intoxicating liquor by the person licensed, or by his agent or servant," but we think the word "injured" here is synonymous with the word "damaged," and the true reading and meaning of the part of the section referred to is "any person who may be injured,"—in other words, may suffer damage.

It is further insisted, and here we have the pith of the argument of counsel on this branch of the case, that the doctrine that any dealer who furnished any of the liquor by which intoxication was produced is liable cannot be extended or held to cover a case where death is the ultimate result of the intoxication; that this appears from section 18 of the liquor law, which is as follows: "On the trial of any suit under the provisions hereof, the cause or foundation of which shall be the acts done or injuries inflicted by a person under the influence of liquor, it shall only be necessary to sustain the action to prove that the defendant or defendants sold or gave liquor to the person so intoxicated, or under the influence of liquor, whose acts or injuries are complained of, on that day or about that time when said acts were committed or said injuries received; and in an action for damages brought by a married woman or other person whose support legally devolves upon a person disqualified by intemperance from earning the same, it shall only be necessary to prove that the defendant has given or sold intoxicating drinks to such person during the period of such disqualification." (Compiled Statutes, sec. 18, ch. 50.) That the statement "it shall only be necessary to prove that the defendant has given or sold intoxicating drinks to such person during the period of such disqualification" refers

to the disqualification of intemperance alone and does not
include death, especially when strictly construed, as is con-
tended it must be as against the sureties upon a bond.
In General Statutes of 1873, section 579, chapter 58,
identical with section 18, except in the last clause thereof,
which is the one now under consideration, it was provided
as follows : " It shall only be necessary to prove that the
defendant has given or sold intoxicating drinks to such
person in quantities sufficient to produce intoxication or
when under the influence of liquor." In 1881 the chapter
containing section 579 was repealed and the chapter, section
18 of which we have quoted, was enacted and section 579
reproduced with the exception and change we have shown.
In the law as it existed in 1873 the idea was expressed
that it was only when liquor had been given or sold to a
person in quantities sufficient to produce intoxication, or
the person was, at the time of the furnishing of the liquor,
under the influence of liquor, that liability would arise.
In the enactment of 1881 this was abandoned and the
"contribution" idea adopted by the legislature and em-
bodied in this later act on the subject. It was undoubt-
edly the intention of the law-makers in enacting the law
of 1881 to pass a statute upon the subject involved com-
plete within itself, and to embrace in particular the matter
of any damages arising from the traffic licensed under its
provisions, even to the quantity and quality of evidence
necessary to be introduced in an action instituted therefor.
Its wording is " all damages." The intent is unmistak-
able. To say that where the intoxication produces a par-
tial disqualification, an action will lie; where it produces a
total disability, either mentally or physically, but the mere
breath of life remains, a liability arises ; but where death
ensues or is caused and the means of support are perma-
nently destroyed, there is no cause of action,—would be a
construction violative and destructive of the legislative in-
tent. Although the meaning which includes the damages

for loss of support by death of the husband caused by intoxication may be said to be not strictly within the words or language employed in the phrase in relation to the proof to be adduced, it is clearly within the language of the other portion, and expressive of the apparent design of the legislature and entirely harmonious with the spirit and policy of the law; and the section in regard to evidence must be interpreted in connection with the other portions of the law and in unison with its spirit and policy, to be applicable in such an action as the one at bar, where it is predicated upon the loss of support of the wife and children claimed to have been caused by intoxication of the husband, and as against the vendor of the liquors drank, which in whole or in part caused the intoxication, or his bondsmen.   It is a rule of interpretation, universally accepted, that in giving a construction to a statute the court will consider its policy and the mischief to be remedied and give it such an interpretation as appears best calculated to advance its object by effectuating the design of the legislature. ( *Wilber v. Paine*, 1 O., 255.)   "In an action on the bond of a saloon-keeper the fact essential to be shown is the disqualification to support those thereto entitled, caused or contributed to by sales of intoxicating liquors to one upon whom legally devolves the duty of furnishing such support, and this disqualification may be either partial in effect or limited in duration by reason of physical disability, or it may become complete, as in death." ( *Chmelir v. Sawyer*, 42 Neb., 362.)   The preponderance of authority and the weight of argument may be said to sustain a right of action for damages consisting of an injury to or loss of the means of support of the plaintiff, the result of the death of the husband from intoxication caused by drinking liquors. ( *Smith v. Reynolds*, 8 Hun [N. Y.], 128 ; *Emory v. Addis*, 71 Ill., 273 ; *Schroder v. Crawford*, 94 Ill., 357 ; *Mead v. Stratton*, 87 N. Y., 493 ; *Hackett v. Smelsley*, 77 Ill., 109 ; *Davis v. Standish*, 26 Hun [N. Y.],

608; *Rafferty v. Buckman*, 46 Ia., 195; *Chmelir v. Saw-yer, supra; Roose v. Perkins*, 9 Neb., 304; *Thomas v. Hinkley*, 19 Neb., 324; *Scott v. Chope*, 33 Neb., 41; Black, Intoxicating Liquors, sec., 310; *Brockway v. Patterson*, 40 N. W. Rep. [Mich.], 192; *Kerkow v. Bauer*, 15 Neb., 150.)

It is assigned for error that " the court erred in giving the eighth instruction." This instruction was as follows: "If you find from the evidence in this case that the intoxi-cation of James H. Houston was such as to deprive him of the normal use of his faculties, either physical or men-tal, so that he was rendered incapable of caring for him-self and of protecting himself from the results of accidents or circumstances to which he was subjected, and that by reason of such deprivation of his normal powers of body or mind, his death was produced by his inability to pro-tect or defend himself against the circumstances which threatened his life, and that his death was caused by such inability to so protect and to defend himself, then you are instructed that such intoxication is to be deemed and taken as the cause of his death." It is claimed that the court in the first sentence of the instruction assumed the fact of the intoxication of James H. Houston, and further that the in-struction was inconsistent or in conflict with others of the charge in which the jury were told that if the party ob-tained a portion of the liquor which caused the intoxica-tion of the defendant, it was sufficient to fix a liability upon defendant, while in this the jury were informed that the intoxication must be such as to deprive the deceased of his normal powers of body and mind and render him incapable of caring for himself. As to the first portion of the objection, there was no conflict in the evidence as to the intoxication of the deceased during a part of the day and evening prior to his death. It was a fact which was not controverted, and it was not error for the court to state it as it did in the instruction. (2 Thompson, Trials, sec. 2295.) With reference to the second objection it will suffice to say

that the court charged that the intoxication must be such as to become the cause of death, in the eighth instruction and in the others as to the liability arising from contributing to the existence of such condition, which was entirely competent and proper.

It is urged that the fifteenth instruction was erroneous, in that it told the jury that it was proper in estimating the damages to take into consideration the probable length of life of the deceased, but took no notice of the fact that the period during which the plaintiff in the action would be entitled to the support of the husband would be during their joint lives, and further, that it should have called attention to the drinking habits of the deceased. The instruction referred to was such a one as has been approved by this court in similar cases (*Roose v. Perkins*, 9 Neb., 304; *Sellars v. Foster*, 27 Neb., 118; *King v. Bell*, 13 Neb., 409), and was, to the extent that it purported to cover the issues in the case, correct; and in it the jury were told to take into consideration the habits of the deceased. If a more extended and explicit instruction had been desired upon the subject embraced in this, it should have been prepared and presented by the party, with a request that it be given. Even conceding that there was error committed in the respect claimed by counsel, *i. e.*, that there was a failure to notice and call attention to the expectancy of the joint lives of plaintiff and deceased, it may be said that it was not prejudicial to the rights of defendants. The rights of the five children, of ages ranging from three years to fifteen, were to be weighed, and in view of the sum which it was testified that deceased could earn per day, etc., the amount of the verdict cannot be said to be excessive for lack of consideration by the jury of the element which it is claimed was omitted in the instruction.

It is claimed that the court erred in giving the sixteenth instruction, in which the jury were told that if they found against the principal defendant, the saloon-keeper, they

should also find against the bondsmen, as the execution of
the bond was admitted by the answer. We do not think
that this objection is tenable. A fair construction of the
averments of the answer in regard to the bond may, we
think, be said to support the statement of the court in the
instruction.

It is next claimed that the court erred in giving on its
own motion the sixth, seventh, eighth, ninth, tenth, fif-
teenth, and sixteenth instructions, and the seventh is at-
tacked as being erroneous and prejudicial in the portion
wherein it was said: "You are instructed that if you find
from the evidence that the defendant Gran, by himself or
by his servants or employes, sold, gave, or furnished to
said Houston intoxicating liquors in any quantity whatever,
which liquors aided in producing a state of intoxication," etc.,
and more particularly the words "any quantity whatever,"
by which it is claimed the jury would be induced to believe
that if liquor had been obtained by deceased in Gran's sa-
loon, in even the smallest quantity, it would be sufficient
to raise a liability. It must be remembered that the words
were followed by others in which the jury received the in-
formation that the liquor, whatever the quantity, must have
been sufficient to aid in producing the intoxication, and
must have contributed to the intoxication. The words used
were probably not the best which could have been em-
ployed, and it is probable that the idea of contribution in
producing the intoxication was more finely drawn or min-
imized than was entirely proper, but even if this be true,
in view of the evidence in relation to the point involved
and sought to be conveyed by the instruction, i. e., the
amount of liquor, if any, furnished to Houston at Gran's
saloon, we cannot believe that it misled the jury or preju-
diced the rights of the complaining parties.

It is next argued that the ninth instruction proceeds upon
the assumption that defendant Gran had furnished the means
of intoxication. We do not think the instruction is open

to the objection urged against it. Counsel contends that
the law only makes defendants liable when liquors are sold or
given to the party by the dealer, his agents or servants; that
other persons may have purchased liquors in Gran's saloon
and given them to Houston without the knowledge of Gran,
and if so the sureties would not be liable; that all the evi-
dence agrees that Houston had no money, and if he drank
in Carr's saloon the liquors were purchased by others; that
defendants are only liable, if liable at all, for liquors sold
or given by defendant Gran to the deceased. Without dis-
cussing the point attempted to be presented by the forego-
ing statement, we will say that it appears from the evidence
of witnesses for both plaintiff and defendants that Houston
had money and displayed it in the saloon in question on
the day on which it is alleged in the petition he obtained
the liquors there, and there is sufficient testimony to sup-
port a finding that he received some liquor there on that
day for which he paid. The remainder of the argument
under this head is mainly devoted to combating, with the
vim and skill possessed by counsel, the contribution idea
and the manner of its exposition and conveyance through
the instrumentality of the instructions to the jury, and, as
we have hereinbefore noticed and disposed of this question,
it need not be further commented upon here.

It is alleged, "The court erred in giving on its own mo-
tion the eleventh instruction and in refusing to give the
twelfth instruction asked by the defendants." By these
instructions the question is raised of whether the consent or
acquiescence of Mrs. Houston in the selling or furnishing of
the liquors to her husband constituted a defense to the ac-
tion, or should, if shown, be taken into consideration by the
jury in estimating the damages and in mitigation thereof.
The rule governing this question was announced by this
court in the case of *Buckmaster v. McElroy*, 20 Neb., 557,
in which it was held that a party who purchased, paid for,
and drank liquors could maintain an action for damages

resulting to himself from the intoxication produced by the liquors. The principle involved in the present case, where it is sought to interpose the consent of the wife, one of the injured parties, as a defense is the same. We are unable to agree with counsel in the proposition that there is a distinction between the two cases. The rule announced in *Buckmaster v. McElroy* was mentioned in the case of *Curtin v. Atkinson, supra,* in connection with other decisions involving the liability of liquor dealers, and more especially that of the sureties on the bonds of retail liquor dealers, and it was said: "And in *Buckmaster v. McElroy,* 20 Neb., 557, it was held that one who had suffered injury in consequence of his own voluntary intoxication may recover on the bond of the saloon-keeper from whom the liquor was procured. We are not disposed to recede from the position taken in previous decisions, notwithstanding the last named case has been the subject of no little criticism, particularly by Mr. Black in his recent work on Intoxicating Liquors, 291." We do not care to enter into a discussion of the reasons for and against the rule announced in the first of the two cases mentioned in this connection, but will say that we will adhere to the doctrine formerly established. The consent or acquiescence of Mrs. Houston to the giving or sale of liquors to her husband was matter constituting an affirmative defense, even if it could be allowed in any degree as a defense, and to be available must have been pleaded, and this was not mentioned in the answer, and could not have been taken advantage of under general denial, hence this assignment is clearly without merit. New matter constituting an entire or partial defense to a cause of action must be pleaded in the answer and cannot be shown or made available under a general denial. (*Mordhorst v. Nebraska Telephone Co.,* 28 Neb., 610.)

It is alleged as error that the court erred in refusing to instruct the jury as asked upon the question of proximate cause. This assignment refers to the request to give the

twelve instructions offered on behalf of the defendants, three of which were given and the rest refused. The doctrine of proximate cause as set forth in these instructions was discussed and passed upon by this court and disapproved in the case of *McClay v. Worrall*, 18 Neb., 44, also in *Sellars v. Foster*, 27 Neb., 133, and following the rule then announced the trial court did not err in refusing to give the instructions on the subject of proximate cause.

It is claimed by counsel that the verdict of the jury was evidently the result of passion and prejudice. It is argued that this is shown by an excessive verdict and the affidavits of the jurors. A careful examination of the evidence bearing on the point of the amount to be allowed, if any, convinces us that the verdict in this particular is fully sustained by the evidence and cannot be said to show, when viewed in connection with the testimony on this point, that it was fixed in amount by considerations of passion and prejudice. The affidavits of the jurors filed in support of the motion for new trial were in relation to the conversations which occurred among the jurors in the jury room after the jury had retired to consider the case, and were devoted mainly, if not entirely, to making it appear that the jurors were influenced to render the verdict. by improper motives and through prejudice. The motives which finally influenced each particular juror to render a verdict must necessarily be and remain within his own conscience, and cannot be correctly judged, as a rule, by chance remarks made or heard during the arguments and conversations which take place while deliberating upon a verdict. These are matters essentially inhering in the verdict. The affidavits presented in the case at bar were objectionable in this respect and cannot be received to impeach the verdict. (*Johnson v. Parrotte*, 34 Neb., 26; *Harris v. State*, 24 Neb., 803; *Gottleib v. Jasper*, 27 Kan., 775; *Bryson v. Chicago, B. & Q. R. Co.*, 57 N. W. Rep. [Ia.], 430.)

One of the grounds of error assigned is that the court excused one Adolph Wagner, a juror who was being examined with reference to his qualifications to serve in that capacity in this particular case, without any sufficient reason for so doing. We have carefully examined the record relating to such alleged erroneous action of the court in respect to this juror, and do not feel warranted in concluding that there was any abuse of the discretion always to be exercised by the court in the discharge of jurors during the impaneling of a jury to serve in a particular case. (*Richards v. State*, 36 Neb., 18 ; *Omaha & R. V. R. Co. v. Cook*, 37 Neb., 435.) In this connection we will notice the complaint that another juror was challenged and excused on the ground that he was a party defendant in a suit pending in the trial court for trial at that term. This is a statutory cause for challenge. (Code of Civil Procedure, sec. 668*l*.) It is contended by counsel for defendants that, while the record discloses that the juror was a party to a pending action in the trial court, it also shows that it was not at issue, and does not show that it was for trial at that term, and as a matter of fact it was not then tried. On the other hand, counsel for plaintiff contend that the case to which the juror was a party stood for trial May 7, 1894, a day of the term at which this case was tried. There was an entry in what is marked "From Law Docket, District Court, Lancaster County, Nebraska, page 53," introduced during the examination of this juror, in which appears the following: "April Term, A. D. 1894. May 7th, A. D. 1894. Day 157," in connection with the title of a cause in which the name of the juror appeared as a party defendant, upon which we presume counsel for plaintiff base the statement that the case was set for trial May 7, 1894. To us, this entry, without some explanation or further knowledge, is not intelligible, or cannot be said to contain the information claimed by counsel; but it will be presumed that the trial court understood the entry on its

Gran v. Houston.

own docket, and, in the absence of any definite showing to the contrary, that it acted advisedly as to the facts necessarily involved in its action in excusing the juror for the cause stated.

It appears that the witnesses were excluded from the court room during the progress of the trial, and that one J. Bush was a witness for plaintiff, and when this witness was called to the stand, counsel for defendants objected to his testifying, the following being the record of what occurred at that time:

"Jacob Bush, sworn and examined by Wilson.

"Lambertson: I object to this witness testifying, on the ground that he has been present in court this morning while the preceding witness was testifying.

"Wilson: Mr. Heaton's examination was restricted to one point and this man's examination will be restricted to the earnings of which Mr. Heaton said nothing.

"The Court: That is all you wish to prove?

"Wilson: Yes.

"The Court: Overruled, on the ground that counsel states that the witness is only to testify to earnings. Exception."

It is true that the evidence of the prior witness was on an entirely different branch of the case from the one to which the testimony of this one was directed, and it does not appear, and no claim is made, that the party calling this witness was in any way or to any degree at fault for his action, which, it is claimed, disqualified him as a witness, and because of which he should not have been allowed to testify. Under the facts and circumstances as they appear of record there was no error in allowing the witness to testify. (1 Thompson, Trials, sec. 281.)

It is alleged that the court erred in admitting a certified copy of the bond, with justification of the sureties, over the objection of counsel for defendants. In the section of the statute which provides for the taking of a bond of a

party who obtains a license to sell liquors it is also stated:
"The board taking such bond may examine any person
offered as security upon any such bond, under oath, and
require him to subscribe and swear to his statement in re-
gard to his pecuniary ability to become such security."
Pursuant to the provisions of this portion of the sec-
tion referred to, the sureties on the bond, upon which
this suit was based, were required and did swear to a writ-
ten or printed statement regarding their pecuniary ability
to become security, and this sworn statement appeared on
the bond, immediately below the signatures attached to the
bond.   Probably in taking the bond a prepared form was
used which included in blank a form for the justification of
the sureties.   It is all included within the certificate of the
city clerk to the copy of the bond as a part of it, but as
we have only a copy, we cannot say whether it was all upon
the one form or not.   The record in regard to the offer and
admission of the bond is as follows: " Wilson offered in
evidence certified copy of the bond sued on in this case.
Lambertson objected, as incompetent, immaterial, and not
the best evidence ; the execution not proved.   Overruled
and exception."   The copy of the bond offered was duly
certified to by the city clerk and was admissible under
the provisions contained in section 15 of the liquor law,
wherein it is stated: " Said damages and expenses to be re-
covered in any court of competent jurisdiction by any civil
action on the bond named and required in section 6 of this
act, a copy of which, properly authenticated, shall be taken
in evidence in any court of justice in this state, and it shall
be the duty of the proper clerk to deliver, on demand, such
copy to any person who may claim to be injured by such
traffic;" and the objection was confined to the admissibil-
ity of the bond and no reference was made to the justifica-
tion, either as a portion of the paper, or in and of itself ;
hence, there was no error, if any committed, which is of
any avail.

It is further alleged in this connection that the attorney
for plaintiff in his argument to the jury made mention of
the sworn statement of the sureties as to their financial re-
sponsibility and argued to some extent in respect to facts
therein set forth, and that this was misconduct on his part,
which was prejudical to the rights of defendants.   The
portion of the record to which this complaint is directed is
as follows: "In the course of the argument of Mr. Wil-
son for the plaintiff to the jury, and on the subject of the
responsibility of the bondsmen, Mr. Wilson said: 'All the
time, as far as I can find out, they have never paid one
dollar upon the bond.'   Lambertson:  'I object to that.
There is no proof of it.'   The Court: 'There is no evi-
dence of that.'   Wilson: 'Carr swears in the bond he is
worth more than $5,000 over and above all his liabilities
and debts.'   Lambertson: 'I object to that.   That is over
five years ago.'   Wilson [reading from the bond]: 'The
sureties being duly sworn, each for himself says he is a
resident freeholder in the county of Lancaster, and is worth
the sum of $5,000 over and above all debts and liabilities
which he has incurred.'   Lambertson: ' What was the date
of that?'   Wilson: 'The date of the bond is March,
1888.'"   There was also  an affidavit filed on behalf of
defendants purporting to state the facts and circumstances of
the alleged misconduct of the attorney for the prevailing
party and an affidavit in behalf of plaintiff in regard to
the same matter.   It will be noticed that no objection was
made to the language used by counsel for plaintiff and a
ruling obtained thereon.   Where a question of this nature
is sought to be presented to this court for review, the atten-
tion of the trial court should be directed to the language
employed by counsel which is thought to be prejudicial, by
an objection, and, if the objection is overruled, an excep-
tion taken and such portion of the proceedings made part
of the record by the bill of exceptions.   It will then be
reviewed by this court.   This course was not pursued in

the present case. Therefore the assignment of error will not be considered. (*McLain v. State*, 18 Neb., 154; *Bolar v. Williams*, 14 Neb., 386 ; *Bradshaw v. State*, 17 Neb., 147.)

It is argued that it was error for the court to allow Charles Shoemaker, the coroner, to give his opinion as to the cause of Houston's death. The question calling for his opinion was objected to, the objection overruled, and exception taken by counsel for defendants. The witness was the coroner, and as such took charge of Houston's body, and was a physician and surgeon and his evidence was admissible. (Rogers, Expert Testimony [2d ed.], sec. 49, [1st ed.], sec. 50.)

A question was asked of the plaintiff when testifying, which was answered without objection. Counsel for defendants then moved to strike out the answer as incompetent. This was overruled, to which counsel excepted, and the action of the trial court is now claimed to have been erroneous. The answer given was responsive to the question, and when allowed to be received without objection, whether or not the court will sustain the motion to strike it out becomes discretionary, and we have discovered nothing prejudicial to defendant's rights in the refusal of the court in this particular instance. (1 Thompson, Trials, sec. 718 ; Abbott, Trial Brief, 62.)

This witness was asked the following question in reference to her husband: "What was his chance of getting work when there was any brick-laying to be done, if you know?" This was objected to, as incompetent, immaterial, irrelevant, and calling for the opinion of the witness. The objection was overruled and error is assigned. The question, while probably susceptible of an interpretation by which it might be said to be calling for an opinion, has a more obvious meaning; *i. e.*, what had been his ability to get work, or was his skill in his trade such as to enable him to obtain work when there was any of the kind in progress,

and so viewing it, it was competent and not error to allow it to be answered. The answer which was given was not responsive, and not in any respect or degree prejudicial or harmful to the rights of defendants.

It is claimed that "The court erred in permitting the plaintiff to testify as to what the deceased would usually do with his money when he was paid off, and permitting her to testify as to who handled the money usually, and who bought food, clothing, and other necessaries." We do not think there is any merit in this objection. The tendency of this evidence, as we read it in the record, was to prove that the money earned by the husband was the source of and devoted to the support of the wife and children and which they claimed was lost to them by his death.

The next complaint is that the court sustained an objection to the following question: "You may state whether or not any instructions had been given by you to your bartender relative to the sale or refusal to sell or give intoxicating liquors to the deceased, James Houston, prior to this date," and excluded the evidence sought to be elicited by it. This question was passed upon when this case was formerly before this court, and it was held: "The fact that a saloon-keeper, prior to the sales complained of in a civil damage case, had instructed his servants not to sell liquor to the deceased, is inadmissible in evidence as not tending to prove that such sales were not in fact made," and will now be adhered to without further discussion. (*Houston v. Gran,* 38 Neb., 687.)

During the cross-examination of Thomas Carr he was asked this question: "What capacity were you in in 1883?" [referring to what position he occupied in the saloon business], which was objected to, as incompetent, irrelevant, and immaterial. The objection was overruled and the witness answered: "I was acting as manager then." Counsel for defendant argued that the death of Houston was in 1889, and to permit the defendant Carr to be interrogated in re-

gard to his connection with the liquor business six or seven years prior to such date was prejudicial and could have been but for one purpose, that of showing that Carr was a saloon-keeper during that time, and for that reason was unworthy of belief. It had been shown by this witness during direct examination that he was manager of the saloon business March 30, 1889,—the date when it was alleged in the petition Houston obtained liquors in the saloon in question, and further, that the witness first engaged in the saloon business in 1881. We do not believe that the fact being shown of his being manager in 1883 tended to prejudice his rights in the respect argued by counsel, or in any degree, and must hold this assignment without merit.

We will next notice the statement that the court erred in permitting the following question to be answered (this refers to the cross-examination of Carr) : " Since 1881 have you been operating a saloon as principal? " As shown in the record there was no objection made to this question, and the assignment, therefore, cannot be considered.

It is urged that the court erred in not granting plaintiff in error a new trial on account of newly-discovered evidence. In support of this part of the motion for a new trial affidavits were filed setting forth the facts to be proved by the newly-discovered witnesses. This evidence, according to the detailed statements in the affidavits, was cumulative in character, and it cannot be said that it would be sufficient to render clear that which was before doubtful, or of so controlling a nature as to probably change the verdict. Hence, the trial court did not err in refusing to grant this ground of the motion for new trial. (*Schreckengast v. Ealy,* 16 Neb., 510.) A new trial will not be granted on account of newly-discovered evidence merely cumulative in its character. (*Campbell v. Holland,* 22 Neb., 589; 16 Am. & Eng. Ency. of Law, 575–577.)

To support the motion for a new trial in its allegation of misconduct of the jury there appears in the affidavit of

William A. Cadman, one of the jurors on the case, the following statement: "Affiant further says that on the same day, but after the jury were discharged, the defendant Jerry Harrington came to this affiant and had a conversation with him, in which said Harrington said that he was greatly surprised at the verdict, for the reason that he was out with one of the jurors one night during the trial in which he and said juror were drinking together; that said juror said he would never permit a verdict to go against him, Harrington, and he, Harrington, was surprised that he, the said juror, had gone back on his statement." It is claimed on behalf of the defendants John Gran and Thomas Carr that this, if true, was such misconduct of the juror, referred to in the affidavit, as to disqualify him to sit as a juror and vitiated the verdict and entitled them to have it set aside and a new trial awarded. We do not view this position of counsel as tenable. There is no substantive evidence contained in the statement in the affidavit of any misconduct of the juror. The most that can be claimed for it is that it shows that the conversation occurred between the affiant and defendant Harrington, in which the latter stated that a juror had acted in a certain manner. This is wholly incompetent and insufficient. If the statements of the affidavit in regard to the actions of the juror were true, the parties to what transpired deserved punishment. Nothing appears from which it can be said the rights of Harrington's co-defendants were liable to be in any particular or degree prejudiced or for which, at their motion, the judgment should be vacated and a new trial granted. The judgment of the district court is

AFFIRMED.