STATE OF NEBRASKA v. PAXTON & GALLAGHER COMPANY.

FILED FEBRUARY 25, 1913. No. 17,536.

Food: STATUTORY REGULATIONS. Where syrup is put up by a whole-saler and sold under a label stating that each half-gallon can contains a brand composed of cane syrup and maple syrup, the pure food law requires also a statement showing the proportion of each. Comp. St. 1911, ch. 33, secs. 8, 22.

ERROR to the district court for Lincoln county: HANSON M. GRIMES, JUDGE. *Exception sustained.*

*Grant G. Martin, Attorney General, George W. Ayres, Frank E. Edgerton* and *George E. French,* for plaintiff in error.

*Isaac E. Congdon* and *Wilcox & Halligan, contra.*

BARNES, J.

In the district court for Lincoln county, the state instituted a prosecution against defendant for violating the pure food law by selling to Ernest T. Tramp, October 5, 1911, six half-gallon cans of improperly labeled or misbranded syrup. The trial court sustained a demurrer to the information and dismissed the prosecution. For the purpose of settling the question of law raised by the demurrer, an exception by the county attorney to the decision below is presented here under section 515 of the criminal code.

The information charged: "That Paxton & Gallagher Company, a corporation, on or about the 5th day of October, 1911, in the county of Lincoln then and there being did then and there wilfully and unlawfully sell to one Ernest T. Tramp, six cans of syrup, each of which said cans did contain a food product, composed of more than one ingredient, to wit, commercially pure cane syrup, and commercially pure maple syrup, and which said product was composed of 75 per cent. of said cane syrup and 25

per cent. of said maple syrup, and as thus prepared was offered for sale in said cans containing said mixture, and was composed solely as aforesaid, each of which said cans was then and there labeled and branded:

" '½ Gallon,
" 'YELLOWSTONE
" 'Brand
" 'Pure
" 'SUGAR CANE SYRUP
" 'and
" 'CANADIAN MAPLE SYRUP
" 'Guaranteed equal to any blended syrup
" 'on the market.  Packed for
" 'PAXTON & GALLAGHER CO.
" 'Omaha, Neb.'

"And there was not printed on the outside on the main label of said cans, or anywhere else on the outside of any of said cans, a correct statement of the percentage of cane syrup and the percentage of maple syrup of the contents of said cans, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the state of Nebraska."

The pure food law makes the sale of a misbranded article of food unlawful.  Comp. St. 1911, ch. 33, sec. 22.  It further provides that an article shall be deemed misbranded in the case of food: "If sold for use in Nebraska and in package form, other than canned corn; if every such package, as branded and named below, does not have a correct statement clearly printed, on the outside of the main label, of the contents * * * viz., all dairy products, lard, cottolene, or any other article used for a substitute for lard, wheat products, oat products and corn products, and mixtures, prepared or unprepared, sugar, syrup and molasses, tea, coffee, and dried fruit: * * * Provided, that an article of food which does not contain any added poisonous or deleterious ingredients shall not be deemed to be adulterated or misbranded in the follow-

ing cases: First. In the case of mixtures or compounds which may be now, or from time to time hereafter, known as articles of food, under their own distinctive names, and not an imitation of, or offered for sale, under the distinctive name of another article, if the name be accompanied on the same label or brand with a statement of the place where said article has been manufactured or produced, * * * and in case of syrups the per cent. of each ingredient composing said food." Comp. St. 1911, ch. 33, sec. 8.

Did the pure food law require defendant to state on its label or brand the percentage of each kind of syrup in its cans? It is agreed by both parties that this is the question presented. It is clear that the statute required defendant to place on each can a correct statement of the contents. Defendant contends that the label or brand copied in the information was such a statement. The state insists that any lawful statement includes the percentage of each syrup. In determining this question the purposes of the legislation, the evils against which it is directed, and the remedies provided must be considered. In *Gran v. Houston*, 45 Neb. 813, 825, this court said: "In giving a construction to a statute the court will consider its policy and the mischief to be remedied, and give it such an interpretation as appears best calculated to advance its object by effectuating the design of the legislature."

It is well understood, and often stated by the courts, that the promotion of honesty and fair dealing in the sale of foods is one of the purposes of pure food laws. Imposition and fraud arising from the custom of inclosing food in packages for the purposes of sale and delivery, without being opened, are among the evils which called for, and resulted in, the legislation on this subject. The legislative remedies require dealers in some form to make certain packages of food show what they contain, and how much, and to submit to punishment for failure to comply with such requirements. As applied to the cans of syrup sold by defendant, what, in the light of the purposes,

evils and remedies ·considered in the pure food law, is meant by the term "correct statement of the contents"? Each half-gallon can contained two distinct kinds of syrup. The maple syrup has a distinct character and quality of its own. It is known to be more expensive than cane syrup. If the label used did not indicate that the quantity of cane syrup in a can was the same as the maple, there was nothing on the outside of the package to show the proportion of each. The demurrer admits that 25 per cent. only was maple syrup. The quantity thereof was not stated on the label. As applied to the contents of a can containing two distinct kinds of syrup of different quality and value, the quantity of each kind is as clearly within the purposes, evils and remedies affected by the pure food law as the names of the syrups. A "correct statement of the contents," therefore, included the quantity or proportion of the different syrups, as ·well as the name of each. In this view of the law, the demurrer should have been overruled. It follows that exception of the county attorney is sustained.

EXCEPTION SUSTAINED. ·

REESE, C. J., not sitting.

SEDGWICK, J., dissenting.

Section 251 of the criminal code provides, among other things: "No person shall be punished for an offense which is not made penal by the plain import of the words, upon pretense that he has offended against its spirit."

This is a question of the meaning of a statute. A somewhat lengthy and complicated section of the statute containing different distinct subdivisions is sometimes at first sight difficult of construction. What was the intention of the legislature? We are not allowed to legislate by adding to or taking from what the legislature intended. The purpose of the whole statute is to prevent two things, adulteration and misbranding. The chapter, after providing for a board and their method of proceeding,

etc., comes to section 7, which enacts what shall be considered adulteration, and then comes section 8, which begins with a general statement of misbranding, which is supposed to cover most cases that will arise. An article is misbranded if the label "shall bear any statement, design or device regarding the ingredients or the substances contained therein, which statement, design or device shall be false or misleading in any particular." This general statement is followed by lengthy detailed definitions of what shall be considered and what shall not be considered misbranding. After this general definition of misbranding the statute proceeds to state six distinct specific definitions which shall govern in determining when an article of food shall be considered misbranded, and then three distinct specific definitions for determining what articles shall not be considered misbranded. This action is brought under the third specific statement of what shall be regarded as misbranding. The language of the complaint brings it under this third specification plainly, and excludes all others. It is not alleged in the complaint that the article sold was known and sold under its "own distinctive name;" the prosecution therefore is not for a violation of that provision which relates only to articles so known and sold. Moreover, that subdivision, which is the second one quoted in the majority opinion, provides that the articles specified therein, under the conditions therein named, shall not be deemed misbranded. A man cannot be adjudged a criminal because the legislature has not specifically enacted that the thing which he has done shall be deemed innocent. There must first be a law defining his act as a crime and affirmatively forbidding it. So that no prosecution could be sustained under that subdivision if it had been attempted by the prosecution, since the subdivision does not forbid anything, but only specifies certain things that are not forbidden. The question is: What is meant by "a correct statement"? In two other subdivisions of the statute, in dealing with other articles

and different conditions, it is enacted that the proportion or percentage of the ingredients must be stated on the label. The legislature must have had a reason for omitting this requirement from the subdivision under which this action is brought. There could be no other reason than that, as to the articles and conditions covered by this subdivision, it was intended that if the ingredients were correctly stated on the label the percentage or proportion of those ingredients should not be required to be stated.

After all of the provisions of the section defining what is misbranding, there is a proviso, which of course relates to all of the section that has gone before, as follows: "Provided, that an article of food which does not contain any added poisonous or deleterious ingredients shall not be deemed to be adulterated or misbranded in the following cases:  *  *  *  Second. In case of articles labeled, branded, or tagged so as to plainly indicate that they are compounds, imitation or blends, and the word, 'compound,' 'imitation' or 'blend,' as the case may be, is plainly stated on the package in which it is offered .for sale, and the ingredients composing said articles." The label in question is copied in the majority opinion. The article sold was labeled "so as to plainly indicate" that it is a blend, and it stated "the ingredients composing said article." The word "blend" is not on the label, but the word "blended" is. If the word "blend" had been "plainly stated on the package in which it is offered for sale" it would have been a literal complaince with the statute, which declares that in such case it "shall not be deemed to be  *  *  *  misbranded." The decision, then, would have been different; the defendant would be "not guilty." The statute does not declare that, unless the word "blend" appears upon the label, it shall be deemed misbranded. The same subdivision provides that, in case the ingredients are made from different kinds of wheat, the word "blended" may be used. Thus the court convicts the legislature of juggling with trifles. A responsible business

firm of our state is adjudged criminal, although the substance and purpose of the statute has been fully complied with. No one can read the label without knowing that two kinds of sugar syrup have been blended to form the article, and that they constitute the only ingredients thereof.

The provision of the statute which I have quoted, declaring that this article shall not be deemed misbranded, is conclusive of this case for another reason. Even if it could be held that the word "blend" is indispensable to afford the protection which this provision is intended to give, still it declares the policy and intention of the legislature and shows beyond question what the legislature regarded as a "correct statement" of the contents. If public policy required that when two kinds of sugar syrup are blended the proportion and percentage should be stated on the label, as well as a "correct statement" of the ingredients of the blend, surely the legislature would not allow this public policy to be thwarted by so simple an expedient as placing the word "blend" upon the label.

Clearly the legislature did not consider that public policy required the proportion or percentage of the ingredients to be stated in such case. While the courts are not authorized to establish a public policy for the state, and are only required to ascertain and enforce the intention and meaning of the legislature in that regard, yet I may be allowed to suggest that there appears to be good reason for the action of the lawmakers in providing that an article which is a blend of two simple, harmless substances of the same nature and use shall not be deemed misbranded if the label plainly states all of those facts with a correct statement of the ingredients. The evidence in this case shows that cane sugar and maple sugar are essentially the same substance, differing only in flavor; that the flavor of the maple syrup is the sole advantage which it possesses over cane syrup; that maple sugar varies greatly, not in its character or quality, but in the strength of its flavor; that the object is to maintain a

uniform flavor, which requires a varying proportion of maple sugar in the blend, depending upon the strength of flavor in the. particular maple sugar used. If, then, the flavor of the article sold is uniform and can be relied upon, there is no benefit to the purchaser in knowing the proportions, except to gratify a curiosity, which cannot be very imperative. There is no necessity or reason for requiring a statement of the percentage or proportion of cane and maple sugar that would not apply with equal or greater force to the various breakfast foods and other similar articles, none of which are required to make such. statement on the label. It seems, then, that there is no reason, in the nature of the case, which would lead us to think that the legislature must have intended to declare such a public policy. The language of the subdivision of the section under which this prosecution is brought, taken literally, does not require that the percentage or proportion shall be stated upon the label, in addition to a correct statement of the ingredients of the simple blend. The fact that, when the legislature intended that the proportion or percentage of the ingredients should be stated, it said so in plain words, and in the subdivision under which this prosecution is brought only required that the label should contain a correct statement of the ingredients, is conclusive of the intention; and the legislature has expressly provided that an article of this kind, branded as this was, shall not be deemed misbranded.

In a matter of so great importance to all of the people of the state as is our pure food law, it is indeed unfortunate if we have failed to understand it and correctly interpret and apply it.

LETTON, J., concurs in this dissent.