MAY BULGER, APPELLEE, v. LOUIS W. PRENICA ET AL.,
APPELLANTS.

FILED MAY 17, 1913.  No. 17,193.

1. **Appeal:** REJECTION OF EVIDENCE: HARMLESS ERROR.  In this an action upon a saloon-keeper's bond for damages for loss of support by causing the plaintiff's husband to become an habitual drunkard, on cross-examination objection to certain questions with reference to his habits prior to the time of sale of the liquor was sustained.  There being other testimony in the record on this point, practically undisputed, *held*, not prejudicial error.

2. **Witnesses:** EXPERT: CROSS-EXAMINATION: REVIEW.  By supplemental allegations in the petition, it is charged that plaintiff's husband died, after this action was begun, as a result of the habitual drunkenness caused by the defendants.  A medical witness was permitted to testify as an expert to the effect of the excessive use of intoxicants upon the human system, more especially with reference to its tendency to impair vitality and lessen the resistant power to disease.  He testified to his personal knowledge of the impaired physical condition of the deceased due to excessive drinking; he having been acquainted with the deceased for years, and having examined him.  *Held*, Under the issues, this evidence was properly received.

3. **Estoppel:** PRINCIPAL AND SURETY: LIABILITY OF SURETY: LIQUOR LICENSE.  Where a surety company has entered into the bond which is necessary to procure a saloon license, and the principal has received the license and become liable for damages to individuals by reason of the traffic, the surety is estopped to plead that there was no valid ordinance in force at the time the license was issued.

4. **Evidence:** BONDS: CERTIFIED COPIES.  A properly authenticated copy of a liquor dealer's bond is sufficient *prima facie* proof of the existence of the bond and of its proper execution.  *Gran v. Houston*, 45 Neb. 813.

5 **Appeal:** MOTION FOR NEW TRIAL.  An assignment that the verdict is excessive, not made in the motion for a new trial and called to the attention of the trial court, will not be considered in this court.

6. **Intoxicating Liquors:** ACTION: DAMAGES.  Persons engaged in selling intoxicating liquors, under licenses obtained pursuant to the laws of this state, are liable in damages for all the legitimate and proximate consequences of their traffic, and, if they have induced

habitual drunkenness in a previously sober and industrious man, they are liable for a consequent thriftless and dissipated career, followed by him, after they have ceased to furnish him with liquors. *Stahnka v. Kreitle*, 66 Neb. 829.

7. ———: "Slocumb Law": Constitutionality. The question as to the constitutionality of chapter 61, laws 1881, known as the "Slocumb Law," has been repeatedly decided by this court, and will not be re-examined.

Appeal from the district court for Lancaster county: Lincoln Frost, Judge. *Affirmed.*

*Brome, Ellick & Brome, I. J. Dunn, D. W. Livingston* and *Morning & Ledwith*, for appellants.

*A. P. Moran* and *W. B. Comstock, contra.*

Letton, J.

This is an action against two saloon-keepers and the sureties upon their respective bonds to recover damages for loss of support and means of subsistence occasioned, as alleged, by reason of Charles Bulger, the plaintiff's husband, having been rendered an habitual drunkard by liquor sold to him by each of the defendant liquor dealers. The answer of the principals amounts to a general denial. The surety companies each admits its qualifications to execute the bonds, and deny generally the allegations of the petition. The Bankers Surety Company also alleged that there was no valid ordinance in force in Nebraska City authorizing the issuance of the liquor license of Prenica. Afterwards the plaintiff was granted leave to amend her petition by attaching supplementary allegations setting forth that on December 19, 1910, Bulger died; that his death was caused and contributed to by the habitual drunkenness caused, and excessive use of intoxicating liquors furnished, by the defendants to him, as alleged in the petition. The reply pleads that the facts with regard to the issuance of the licenses estop the sureties from denying the existence of a valid ordinance. The

jury rendered a verdict for the plaintiff in the sum of
$2,750, and from this judgment the defendants have ap-
pealed.

The testimony shows that Bulger was a man about 40
years of age, a painter and decorater, and a skilled work-
man. He had been married, at the time of his death, for
about 20 years. There were four children in the family,
ranging from 11 to 19 years of age, the oldest being a
married woman, who is not a party to the suit. Mrs. Bul-
ger testifies that Mr. Bulger supported the family until
the latter part of December, 1907, or the early part of
1908, and that she and the oldest boy have practically
supported the family ever since that time; that up to
December, 1907, he contributed $8 or $10 a week to the
support of the family, paid the bills and the house rent,
but that from December, 1907, to his death in December,
1910, he contributed only about $60 to the family support;
that his habits as to the use of liquor and neglect of work
changed materially after 1907; that prior to that time he
would sometimes go five or six months and not touch
liquor, but that after that he was drunk most of the time.
While attending his mother's funeral, he was taken sick,
and died of pneumonia at her home in Missouri in Decem-
ber, 1910. A number of other witnesses, who were familiar
with Bulger's habits, also testified. It seems clearly estab-
lished that, while Bulger was what is usually termed a
moderate drinker, and he would occasionally, prior to
1907, indulge in drinking bouts of several days, he would
also abstain entirely, sometimes for months; but that from
the time mentioned, until October before his death, his
habits became steadily worse, and the evidences of habit-
ual intoxication were obvious. Several witnesses testified
directly to his procuring liquor from one of the defendants,
and other witnesses to facts and circumstances which war-
ranted the jury in believing that he was furnished intoxi-
cants in the saloon of the other liquor dealer. The testi-
mony of some of the witnesses was of such a character
that the jury might well have rejected it entirely if other

facts had not furnished corroboration. One witness, at least, seems to have been pretty successfully impeached. But there was sufficient evidence of the sales, if the jury believed the testimony, to support the verdict.

A large number of assignments of error are made. Some appear to be as to matters not prejudicial, which will not be noticed, others may be grouped, since the proper limits of this opinion will not permit of all being spoken of.

1. On cross-examination Mrs. Bulger was asked whether her husband indulged in intoxicating liquors at the time of his marriage. An objection to this question was sustained as immaterial, and this is the first point upon which error is assigned. We think the court was right. There was no dispute but that he was an occasional drinker up to the time when it is charged the defendants caused him to become an habitual drunkard. For nearly 20 years he had supported his family, and they had no cause for complaint on this score until the latter years of his life. The question and answer could throw no new light upon the issues.

2. A question as to Bulger's habits prior to 1907 was excluded, probably as not proper cross-examination, and this is complained of. It was not strictly within the limits of the direct examination. It might have been just as well to allow it to be answered, but, since the record is full of the history of Bulger's habits, its exclusion was not prejudicial.

3. Over the objection of defendant, Dr. Carriker was permitted to tell, as a medical expert, the effect of the excessive use of liquor upon the human system. He testified that he knew and had examined Bulger, and that after 1907 he was always under the influence of liquor. He was then inquired of as to the power of Bulger to resist disease after that time, and testified that his vitality was impaired to an extent that he could not resist disease to any considerable degree, and especially to resist pneumonia. Objections were made that these inquiries had no bearing upon any issue in the case, and sought, with-

out any foundation, to connect the death of Bulger with the use of intoxicating liquors. These objections were all overruled, and defendants excepted. On cross-examination this witness testified, as to his knowledge and acquaintance with Bulger's condition from 1905, that his condition was worse in 1908 than it was in the fall of 1907, and in September, 1908, than it was in May.

Twelve of the assignments of error refer to the evidence of Dr. Carriker and of Mrs. Bulger as to the nature of her husband's illness and the cause of his death; the gist of the complaint being that it was not shown that the furnishing of liquor and the death of Bulger had the relation of cause and effect. A number of cases from this and other courts are cited to establish the proposition that, while it is not essential that the furnishing of the liquor must be the sole, immediate cause of the injury, yet it must have contributed in an appreciable degree. The petition prays damages for loss of means of support. If the deceased was in such a feeble and physically impaired condition, caused by habitual drunkenness induced by the acts of the defendants, that he was unable to resist the inroads of disease, this would be as much a result of the traffic as would be his inability to perform manual labor on account of physical weakness produced by the excessive use of intoxicants. In the latter case, no court would deny the right to recover. *Acken v. Tinglehoff,* 83 Neb. 296; *Selders v. Brothers,* 88 Neb. 61. In this case, the physical condition of the deceased was such that, even if the element of death had not entered into consideration at all, the verdict did no more than respond to the damages prayed. In *Acken v. Tinglehoff, supra,* although the husband was still living, his ability to resist the vicious appetite had been so destroyed, and his physical ability to earn a livelihood so impaired, that the court allowed a recovery on the theory that the man was a wreck, so far as the support of his family was concerned, his usefulness gone, and his wife might as well have been his widow. The habit of excessive drinking and appetite for liquor

created in Bulger was so strong that a few months before his death the deprivation of the stimulant resulted in hallucinations. His condition was such that a verdict for the same amount would not have been held excessive by this court on the evidence produced. Under these circumstances we deem it unnecessary to enter into extended dialectics as to remote and proximate cause, and as to whether the drunkenness or the disease was the causative force or agency in producing the death. Whether the actual death was the result of the disease or not, the condition of Bulger in his latter days was such as to justify the verdict, and, hence, proof of his death could not be prejudicial, even if erroneous, as to which we express no opinion.

4. Instruction No. 12 is attacked because it withdrew from the jury the evidence that had been received as to whether there was a valid ordinance in force at the time the licenses were issued. We are of opinion that, when a surety company has entered into the bond which is necessary to procure a saloon license for its principal, and the principal has received the license and become liable for damages to individuals by reason of the traffic, the surety is estopped to plead that there was no valid ordinance in force at the time the license was issued. If such were the fact, the sureties should have ascertained it before their undertaking put the principal in a position to engage in the traffic and cause the damages complained of.

5. In the same instruction the jury were told that they should consider the bonds as valid and binding for the period covered. In this connection the defendants complain that there was no evidence of the execution of the bonds, and that the instruction was erroneous. The original bonds were not introduced in evidence, but certified copies of the originals on file in the office of the city clerk were offered, and received, over the objection of the sureties that they were incompetent, and no proper foundation laid for their admission. The legislature, by section 15, ch. 61, laws 1881 (Ann. St. 1911, sec. 7165) has made a

properly authenticated copy of the bond evidence of its execution. This is *prima facie* evidence, and is sufficient, in the absence of opposing testimony. The statute merely gives effect to the presumption of regularity, and changes the burden of proof. This the legislature has power to do. *Gran v. Houston*, 45 Neb. 813, 834.

6. The assignment that the verdict of the jury is excessive appears for the first time in the briefs in this court, and does not appear in any of the motions filed by any of the defendants for a new trial. We have repeatedly held that such questions will not be reviewed in this court if they have not been first called to the attention of the trial court, and an adverse ruling made thereon. This assignment, therefore, cannot be considered.

7. Defendants complain that their demurrers· on the ground of misjoinder of causes of action should have been sustained, and that defendants, although they answered over, have preserved the point by setting it up in the answer. The petition charged that the damages were caused and contributed to by sales of liquor furnished by these defendants between December 1, 1907, and May 1, 1908. It is said that neither Prenica nor Schneider, nor their sureties, would be liable for sales in Schneider's saloon after May 1, 1908; yet, the petition charged that Bulger became intoxicated in Schneider's saloon in November, 1909. Prenica was not in business after May 1, 1908, nor was the same surety on Schneider's bond after that date. The petition, however, fairly construed, pleads that Prenica and Schneider, by sales between December 1, 1907, and May 1, 1908, caused Bulger to become an habitual drunkard, and that he continued from about December 1, 1907, to drink and become intoxicated, and on the 22d of November, 1909, became drunk in Schneider's saloon. If defendants "induced drunkenness in a previously sober and industrious man, they are liable for a consequent thriftless and dissipated career, followed. by him, after they have ceased to furnish him with liquors." *Stahnka v. Kreitle*, 66 Neb. 829.

8. Complaint is made as to the giving of certain instructions, and as to the refusal to give others. The law in such cases is well settled in this state. Taking the charge of the court as a whole, we find it not to be subject to misapprehension, and can find nothing in it of which defendants are entitled to complain.

9. An attack is again made on the constitutionality of the act of 1881, known as the "Slocumb Law." We have repeatedly held that this statute is not unconstitutional, and decline to consider the question again.

The judgment of the district court is

AFFIRMED.

HAMER, J., not sitting.